JAMES B. SMITH, Respondent, *v.* PHEBE G. MOLLESON, Appellant.

1. BUILDING CONTRACT—GUARANTY—CONSIDERATION.  When a building contract is entered into on the faith of the contractor's promise to furnish a bond as guaranty for its performance, it becomes complete and binding on the other party thereto only upon delivery of the bond; and the mutual obligations imposed upon the parties furnish a consideration for the bond, even if it is not given until after the execution and delivery of the contract and after the contractor has entered upon its actual performance.

2. SURETYSHIP — CONSTRUCTION OF CONTRACT.  The doctrine that the liability of a surety is *strictissimi juris* means that a surety shall not be held beyond the precise stipulations of his contract; it does not mean that a different rule must be applied in the construction of contracts of suretyship than that which is to be applied in the construction of contracts in general.

3. SURETYSHIP — CONSTRUCTION OF CONTRACT.  If a surety has used ambiguous language and the party secured has advanced his money on the faith of the interpretation most favorable to his rights, that will, ordinarily, prevail if the instrument is open, reasonably, to such interpretation.

4. RELEASE OF SURETY.  Where the party secured does some act which changes the position of the surety to his injury or prejudice, the latter is no longer bound.

5. BUILDING CONTRACT — CONSTRUCTION — SURETY.  Where a contract to "furnish, cut, set and clean" all the granite work for a building provides for payment in installments not to exceed a certain per cent "of the estimated value of the work performed on the building," the meaning of the contract should not turn on the use of the words "on the building," so as to render payments made to the contractor upon estimates based upon work done upon the granite elsewhere a departure from the terms of the contract, available as a defense to a surety for its performance, when it can be seen from the situation of the parties, the nature of the work and the other provisions of the contract, that the intention was to make the advances as the work progressed.

6. PAYMENT UPON CERTIFICATES OF WORK DONE — SURETY.  When a building contract provides that payments shall be made upon certificates of work done, the fact that payments were made without the certificate does not constitute a change in the position of a surety for the contractor to his prejudice and so operate his release, when it is manifest that the provision was inserted in the contract for the benefit of the owner alone and that the payments so made were not greater in amount than they should have been if the certificate had been exacted.

7. NOTICE OF TERMINATION OF CONTRACT — RECALL — RESUMPTION OF WORK — LIABILITY OF SURETY. When, after giving a notice to terminate a building contract, as provided thereby, on the contractor's failure to perform, the owner recalls the notice and allows the contractor to resume work, and on a second failure to perform, takes possession, as provided by the contract, the effort at performance after the recall of the notice is not to be deemed a new contract, so as to relieve the surety of the original contract from subsequent liability, when, under the terms of the contract, the notice did not of itself terminate the contract, and the owner had power to recall it, and the contract was actually terminated only by the owner's taking possession on the contractor's final failure to perform.

Reported below, 74 Hun, 606.

(Argued January 9, 1896; decided January 21, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 18, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

The action was brought upon a bond executed by the defendant and another, conditioned for the faithful performance by the firm of Pratt & Molleson of a contract between that firm and the plaintiff.

The facts, so far as material, are stated in the opinion.

*William C. Beecher* for appellant. The contract was not a sufficient consideration for the bond, and a new consideration was necessary. (*Walker* v. *Irwin*, 62 N. W. Rep. 785, 787; *Simmang* v. *Farnsworth*, 24 S. W. Rep. 541; *Baker* v. *Wahrmund*, 23 S. W. Rep. 1023, 1024; *Owens* v. *Tague*, 29 N. E. Rep. 784, 786 ; *Altoona* v. *Dunn*, 151 Penn. St. 228, 232.) The surety is released if the principals, without his consent, vary the terms of the contract, the performance of which he has guaranteed. (*Page* v. *Krekey*, 137 N. Y. 307, 314; *Beers* v. *Strimple*, 28 S. W. Rep. 439, 440; *McShane* v. *Padian*, 48 N. Y. S. R. 705, 706; *Barns* v. *Barrow*, 61 N. Y. 39, 42; *Wilson* v. *Edwards*, 6 Lans. 134, 138 ; *Grant* v. *Smith*, 46 N. Y. 93, 98; *Birckhead* v. *Brown*, 5 Hill, 634; *Miller* v. *Stewart*, 9 Wheat. 680, 707, 710; De Colyer on

Guarantees, 351; *Paine* v. *Jones*, 76 N. Y. 274, 278, 279; *Calvo* v. *Davies*, 73 N. Y. 211, 216; *Dobbins* v. *Bradley*, 17 Wend. 422; *Benjamin* v. *Rogers*, 126 N. Y. 60; *W. P. Co.* v. *Walmsey*, 110 Ind. 242; *Henderson* v. *Martin*, 31 Barb. 297.) The plaintiff and Pratt & Molleson varied the terms of the contract in the matter of payments. (*Barns* v. *Barrow*, 61 N. Y. 39; *Wright* v. *Meyer*, 25 S. W. Rep. 1122; *Mundy* v. *Stevens*, 61 Fed. Rep. 77, 84; *Evans* v. *Graden*, 28 S. W. Rep. 439, 440; *Bd. of Comrs.* v. *Branham*, 57 Fed. Rep. 179, 180–183; *Picard* v. *Shantz*, 70 Miss. 381, 383; *Fitzpatrick* v. *McAndrews*, 12 Penn. Co. Ct. 353, 361; *G. S. N. Co.* v. *Rolt*, 6 C. B. [N. S.] 550; *Calvert* v. *L. D. Co.*, 2 Keene, 638; *Warre* v. *Calvert*, 7 Ad. & El. 143.) The plaintiff and Pratt & Molleson departed from the terms of the contract by their method of terminating it. (De Colyer on Guarantees, 362, 363; *Jones* v. *Bacon*, 72 Hun, 606; *Polak* v. *Everett*, L. R. [1 Q. B. D.] 669.

*Jacob F. Miller* for respondent. Pratt & Molleson agreed to give security when the contract between the plaintiff and them was made. It was subsequently given pursuant to such agreement. The letting of the contract by the plaintiff to Pratt & Molleson, on condition of their furnishing security, was a sufficient consideration to support the bond. The bond was not, therefore, void for want of consideration. (*E. C. S. Bank* v. *Coit*, 104 N. Y. 532.) There was no variation made in the agreement with Pratt & Molleson. There was only one agreement with them. There were no departures from it by the plaintiff herein. (*Steinbock* v. *Evans*, 122 N. Y. 551; *Powers* v. *Silberstein*, 108 N. Y. 169.) The certificate of the architect terminating the contract, although given, was not necessary to render the defendant liable. (*Sherman* v. *Mayor*, etc., 1 N. Y. 321.) The plaintiff might have required the certificate of the architect respecting the amount of work done as a prerequisite to the payment of any money by him on account of the contract; but this formality was designed for his protection. He might,

therefore, waive it without changing the contract. (*Sherman* v. *McKeon*, 38 N. Y. 275; *In re Cooper*, 93 N. Y. 507.) The defendant claimed, upon the trial, that Pratt & Molleson were not entitled to receive any money until they had actually set the granite in the building and finished the work there, and only as they did it there. This is untenable. (*Colt* v. *P. F. Ins. Co.*, 54 N. Y. 595; *Russel* v. *Allerton*, 108 N. Y. 288; *Hilleary* v. *S. R. H. G. Co.*, 23 N. Y. Supp. 1016, 1018; *Coyne* v. *Weaver*, 84 N. Y. 386; *Halpin* v. *Ins. Co.*, 120 N. Y. 78; *Kratzenstein* v. *W. Ass. Co.*, 116 N. Y. 59; *Bailey* v. *H. F. Ins. Co.*, 80 N. Y. 23; *Clark* v. *Devoe*, 124 N. Y. 124; *Walton* v. *A. Ins. Co.*, 116 N. Y. 327; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 491; *Kelly* v. *Upton*, 5 Duer, 336; *Parshall* v. *Eggert*, 54 N. Y. 18; *McMaster* v. *Ins. Co.*, 55 N. Y. 22; *White* v. *Fort*, 73 N. Y. 505.)

O'BRIEN, J. The defendant has been held liable as surety upon a bond given to secure the performance, by the contractors, of a building contract, dated November 1, 1888, in which they agreed to furnish, cut, set and clean all the new granite work for the enlargement of a public building in the city of New York. The plaintiff agreed to pay the contractors for this work the sum of $30,000, in monthly payments of not to exceed eighty per cent "of the estimated value of the work performed on the building," the balance, or final payment, to be made when the work was completed. The work was to be done according to drawings and specifications referred to in the contract, and the payments made upon the certificate of the plaintiff's superintendent. The rights and obligations of the parties are specified in the contract with minute detail, and, among other things, it was stipulated that, in case the contractors failed to perform, the plaintiff might take possession of the work and complete it at the contractors' expense. It is conceded that they failed to perform, and that the plaintiff was obliged to complete the work himself at an expense of several thousand dollars more than the contract

price. It was agreed between the plaintiff and the contractors that the latter should give to him a bond to insure the faithful performance of the contract, and, in pursuance of this agreement, the defendant, in behalf of the contractors, executed, under seal, and delivered the instrument upon which this action was brought. It bears date December 27, 1888, and was executed subsequent to the contract, and one of the conditions is that the contractors should well and truly perform the contract referred to, according to its terms, in which case the instrument should be void and of no effect, but in case they failed to so perform, the defendant would pay to the plaintiff his damages, sustained by reason of such nonperformance, not exceeding a sum named. It is conceded that the plaintiff sustained damages, by reason of the failure of the contractors to perform their contract, and the recovery is within the limits of the bond.

The defense is that the bond was given without consideration, and that the defendant became released from its obligations by reason of changes in and departures from the contract guaranteed, without the defendant's consent, by the parties thereto. At the trial a verdict was directed for the plaintiff.

The plaintiff entered into the contract and bound himself, according to its terms, upon the faith of the promise of the contractors to give the bond, and it is admitted that if this was concurrent with the execution and delivery of the instrument, it would constitute a sufficient consideration. But since the bond was given afterwards, and, as the defendant claims, subsequent to the time that the contractors had entered upon the actual performance of the contract, it is insisted that it required some new consideration. If it be true that the evidence in the case would warrant a finding by the jury that the contractors were engaged in the performance of the contract when the bond was given, it would also be true that this was by the grace and pleasure of the plaintiff, and not by virtue of any right under the contract. Their right to insist upon performance, as against the plaintiff, and to receive the benefit of the contract, was not perfected until the bond was given. What-

ever the contractors may have assumed to do before, it was only upon the delivery of the bond that the contract became complete and binding upon the plaintiff, and hence the mutual obligations imposed upon the contractors at one time, and upon the plaintiff at another, furnished a consideration for the bond. (*Erie Co. Savings Bank* v. *Coit*, 104 N. Y. 532.)

The other defense rests mainly upon a construction of the contract which the defendant claims to be the correct one. It should be observed at the outset that the contract guaranteed is by reference made a part of the bond, and, therefore, in order to determine the scope of the defendant's undertaking, the two instruments must be read together. It is true, as the learned counsel for the defendant contends, that the liability of a surety is *strictissimi juris*. But that does not mean that a different rule must be applied in the construction of contracts of suretyship than that which is to be applied in the construction of contracts in general. Like all other contracts the undertaking of a surety must be construed fairly and reasonably, and according to the intention of the parties. If the surety has used ambiguous language and the party secured has advanced his money on the faith of the interpretation most favorable to his rights, that will, ordinarily, prevail if the instrument is open, reasonably, to such interpretation. It means that a surety shall not be held beyond the precise stipulations of his contract. He is not liable on any implied engagement where a party contracting for his own interest might be, and he has the right to insist on the strict performance of any condition for which he has stipulated, whether others would consider it material or not. But where the question is as to the meaning of the written language in which he has contracted there is no difference, and there ought not to be any, between the contract of a surety and that of any other party. In this respect they are ordinary commercial obligations standing upon the same footing as other contracts. (*Gates* v. *McKee*, 13 N. Y. 232; *Bennett* v. *Draper*, 139 N. Y. 266.)

When the terms of the contract guaranteed have been

changed or the contract, as finally made, is not the one upon which the surety agreed to become bound, he will be released. (*Page* v. *Krekey*, 137 N. Y. 307.)

But in this case there is no claim that the terms of the building contract, to which the defendant's bond related, have in any respect been changed by the parties to it. The most that is claimed is that, in its performance, the parties have so far departed from its terms as to change the defendant's condition, to her prejudice, and to deprive her of rights and benefits under the contract, which, otherwise, she would be entitled to by subrogation. Where the party secured does some act which changes the position of the surety to his injury or prejudice, the latter is no longer bound. (*Phelps* v. *Borland*, 103 N. Y. 406; *Jefferson Co. N. Bank* v. *Streeter*, 106 N. Y. 186; *Lynch* v. *Reynolds*, 16 Johns. 41; *Brown* v. *Williams*, 4 Wend. 360; *General Steam Navigation Co.* v. *Rolt*, 6 C. B. [N. S.] 550; *Calvert* v. *L. Dock Co.*, 2 Keen, 638; *Warre* v. *Calvert*, 7 Ad. & E. 143.)

The learned counsel for the defendant insists, upon his construction of the contract, that the plaintiff paid or advanced to the contractors a larger portion of the contract price than he was required to by the contract, and that it was so paid without any certificate. The contention rests upon the defendant's construction of the building contract, which, in substance, is that the provision for "monthly payments not to exceed eighty per cent of the estimated value of the work *performed on the building*," required the estimate to be based only upon the work when actually set in the building, whereas it was in fact based upon the work actually done, under or in pursuance of the contract, whether the granite was actually placed in the building or not. This is the alleged departure from the terms of the contract, which constitutes the principal ground of the defense.

Before the conclusion of the learned counsel for the defendant can be adopted, we must assent to the premise from which it is sought to be deduced, and that requires us to ascertain and determine the true meaning and intention of the clause of

the contract above quoted. It must be given a fair and reasonable construction, and the general situation will throw some light upon the meaning of the written words.

It appears that the granite required was to be quarried in Nova Scotia, transported from the quarry to a place in Connecticut, where it was to be dressed and then transported to New York and set in the building. The work involved in the preparation and carriage of the material was by far the most expensive part of the contract, and it appears that the contractors had no means to meet this outlay, except the monthly payments, so that if they could realize nothing until the stone was placed in the building, they would be practically unable to perform the contract at all. This would be an unreasonable construction, and would, if acted upon, operate so oppressively as to place the contractors at the mercy of the owner, a view that is always to be avoided when possible. (*Russell* v. *Allerton,* 108 N. Y. 292.) It would deprive them of all right to monthly payments except when and to the extent that granite had actually been placed in the walls, however large their outlay for procuring and preparing the material may have been during the month. The parties had the right to give to the expression "work performed on the building" a broader meaning, which could very properly include the value of any work done or materials procured under the contract towards its erection, although the granite procured and prepared had not yet been placed. Since no payments were made in excess of eighty per cent of the value of the work performed in setting the stone and in procuring and preparing them, and as all the materials so procured and prepared actually went into the building, no advances were made by the plaintiff to the contractors beyond the fair requirements of the contract. It is said that it cannot be supposed that the plaintiff contracted to pay any part of the contract price for material at the quarry and at the place where it was to be prepared, or for the work performed in preparing the same for use, before it could be known that it would ever actually reach the building. But

since the monthly payments were stipulated for the purpose
of enabling the contractors to prosecute the work, and as the
operation of placing the granite in place when prepared was
the least part of it, we do not think that this view would be
unreasonable or improbable. It gave to the plaintiff reason-
able assurance and protection against loss, and at the same
time enabled the contractors to prosecute the work. While
the plaintiff is described in the contract as owner, he, in fact,
had no interest whatever in the building, but was the general
and immediate contractor from the city for the erection of the
whole building, and the defendant's principals were his sub-
contractors for a particular and specific part of the work,
namely, the granite work. The plaintiff was not entitled to
his contract price from the city until the building was com-
pleted, though the officers representing it had discretion to
make advances.

Moreover, by a clause in the contract, the plaintiff, in case
the sub-contractors abandoned the work or failed to perform,
could terminate the contract and go on with the work himself,
and in that event the material in process of preparation
should belong to him for the purpose of completing the work,
whether such material was at the building, at the quarry or
at some other place. So that the plaintiff in stipulating for
monthly payments, estimated upon the work actually per-
formed, whether in the building or not, assumed nothing more
than the ordinary and usual risks incident to all contracts of
that character. We do not think, therefore, that the meaning
of the contract should be made to depend upon the use of the
words " on the building " when we can see from the situation
of the parties, the nature of the work, and other provisions
of the instrument, that the intention was to make the
advances as the work progressed. To give to it the other
construction would, in practice, disable the contractors at the
very outset from performance and impose upon the defend-
ant a liability, inevitable from the beginning, and possibly in
a much larger amount than has followed the construction
adopted by the parties themselves.

32

The objection that the payments were made without the certificate may be answered in the same way. The owner could dispense with it if he so elected, under the terms of the contract, if not upon general principles, and since the payments made without it were not greater in amount than, upon the true construction of the contract, they should have been if it had been exacted, the omission of the owner to insist upon it did not prejudice the surety. We are not dealing now with any actual change in the terms of the contract, but with acts or omissions of the plaintiff in the performance, which, in order to operate to release the surety, must be of such a character that it can be said that her position was changed to her prejudice.

It should also be observed that there is a clause in the contract, the material part of which reads as follows: " Should the owner, at any time during the progress of the said work, request any alterations, deviations, additions or omissions from the said contract, he shall be at liberty to do so, and the same shall in no way affect or make void the contract." The defendant, having by reference in effect made the contract a part of the bond, must be deemed to have assented to this provision and to any changes or deviations in performance from the building contract made under it. She has, in effect, guaranteed the performance of a written contract between other parties which, by its terms, permitted the parties to change it or deviate from it. While it is not important to consider the real scope of this clause, since we prefer to dispose of the questions in the case upon the ground that there was no material departure from the contract, when properly construed, it should be noted that she consented in advance to changes of some character which are permitted by the contract in language quite broad and comprehensive.

It would not be difficult to show that the plaintiff might, under this provision at least, dispense with the formality of a certificate when called upon by the contractors, from time to time, for some portion of the contract price, without discharging the surety, even though it was more important to

the defendant's interest and protection than it appears to be. It is manifest that the provision was intended for the benefit of the owner alone, and he could waive it without affecting the defendant's liability. The contractors, having failed to complete the work, the plaintiff gave the notice required by the contract in order to terminate it. The contract provides when and upon what contingencies the plaintiff could terminate and the manner of proceeding for that purpose. The final act which was to put an end to the contract was taking possession of the premises by the plaintiff. The notice may have been a necessary step or formality in that direction, but, of itself, it did not operate to bring the contract to an end. It was clearly within the power of the plaintiff to recall it after given, if not upon general principles, then under the permission contained in the contract. It appears that he was induced subsequently to allow the contractors to go on and they again attempted to complete the work and again failed. It is said that the loss which the plaintiff sustained, and for which the recovery was had, occurred under this permission, and the defendant's counsel treats this last effort at performance as a new contract in regard to which the surety was not bound. It was manifestly nothing more than a mere waiver or recall of the notice for the termination of the contract and the work was performed and payment made, not upon a new contract, but upon the old one, up to the time that the final notice was given, when the plaintiff was obliged to take possession of the work. The case was very fully considered in the court below, and, as we have sufficiently indicated the ground of our concurrence in the decision upon points that are controlling, it is unnecessary to notice other and minor questions in the case.

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.