St. John's College, Fordham, Respondent, *v.* The Ætna
Indemnity Company, Appellant.

Building contract — liability of surety for contractors upon their
failure to complete contract — validity of architect's certificates
— advance payments made by owner — when surety not com-
pelled to reimburse owner therefor.

By a building contract, for the performance of which by the contractors,
who became bankrupt before its completion, defendant is surety, it is
provided that the consideration thereof as named is " payable in manner
following: 80% of each $10,000.00 worth of work done, the last payment
of $10,000.00 to be made in thirty days after full completion and accept-
ance of the building.  Provided that in each of the said cases a certifi-
cate shall be obtained from and signed by the said architect."  The
architect gave a certificate as follows: "This is to certify that John
Maher & Son are entitled to first payment as per contract for new
building for St. John's College, Fordham, N. Y. City, $8,000.00," and
similar certificates as to subsequent payments.  *Held,* that the certifi-
cates given comply with the contract.

If money is given to a contractor, or for his benefit, by an owner in
advance of a payment becoming due upon a contract as a temporary
loan, or for a special purpose, the amount thereof and the circumstances
of the payment should be considered in connection with the obligation
of the surety.  The rule of strict construction ought not to be extended
beyond the reason therefor, particularly when the surety is engaged in
the business of becoming surety for pay and presumably for profit.

Plaintiff made voluntary payments of two separate sums to the contractor
for specific purposes, independently of and without reference to the
contract and without any change or modification therein.  *Held,* that
such payments cannot, under any rule of law or equity, be said to
affect the surety adversely or to have any effect upon the contract or
the defendant's obligation, nor are they a part of the cost of the build-
ing for which it is liable.

*St. John's College* v. *Ætna Indemnity Co.*, 135 App. Div. 480, modified.

(Argued March 2, 1911; decided March 28, 1911.)

Appeal from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
January 5, 1910, affirming a judgment in favor of plaintiff
entered upon a verdict.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Carlisle Norwood* for appellant.    It was a condition prece-
dent to a recovery that plaintiff should prove the giving of
such certificates as were called for by the contract.    (*Byron*
v. *Low*, 109 N. Y. 291; *Sweet* v. *Morrison*, 116 N. Y. 19;
*Nat. Cont. Co.* v. *H. R. W. P. Co.*, 170 N. Y. 439; *Weeks*
v. *O'Brien*, 141 N. Y. 199; *Winter* v. *City of Niagara
Falls*, 190 N. Y. 204; *E. T. C. Co.* v. *Harde*, 90 App. Div.
8; 181 N. Y. 11; *Dwyer* v. *Mayor, etc.*, 77 App. Div. 226;
*Conolly* v. *Hyams*, 47 App. Div. 593; *T. S. & C. Co.* v.
*McElroy*, L. R. [3 App. Cas.] 1040; *Halsey* v. *W. S., etc.,
Co.*, 104 N. W. Rep. 94.)    An architect's certificate under a
building contract must be substantially such as is required
by the contract.    (*Crane Elevator Co.* v. *Clark*, 80 Fed. Rep.
705; *Barney* v. *Giles*, 120 Ill. 154; *Michaelis* v. *Wolf*, 136
Ill. 68; *Thilemann* v. *Mayor, etc.*, 66 App. Div. 455, 463;
*T. S. & C. Co.* v. *McElroy*, L. R. [3 App. Cas.] 1040;
*Halsey* v. *W. S., etc., Co.*, 104 N. W. Rep. 94; *Morgan* v.
*Birnie*, 3 M. & S. 76; 9 Bing. 679.)

*Henry K. Davis* for respondent.    There was no change in
the contract to the prejudice of the defendant.    (*Degnon
McLean Co.* v. *City Trust Company*, 99 App. Div. 195; 184
N. Y. 544; *U. C. S. Bank* v. *Young*, 161 N. Y. 23; *T.
Nat. Bank* v. *Nat. Surety Co.*, 169 N. Y. 563; *Jackson* v.
*Swart*, 182 N. Y. 372; *Gamble* v. *Cuneo*, 21 App. Div. 413;
*Klein* v. *Long*, 27 App. Div. 158; *Fifth Nat. Bank* v.
*Woolsey*, 31 App. Div. 65; *Ments* v. *Both*, 36 App. Div.
348; *Friedlander* v. *N. Y. P. G. Co.*, 38 App. Div. 146; *F.
G. & M. Co.* v. *Anglin*, 44 App. Div. 488; *Gallagher* v.
*Baird*, 54 App. Div. 398; *Wysong* v. *Meyers*, 58 App. Div.
422; *Sachs* v. *A. Surety Co.*, 72 App. Div. 60; *T. Ins. Co.*
v. *Stiles*, 82 App. Div. 441; *City of New York* v. *Clark*,
84 App. Div. 383.)

Chase, J.    The plaintiff, a domestic corporation, entered
into a contract with John Maher & Son for the erection of a
building on its college grounds for which it promised to pay
$99,250.    The contractors agreed to furnish the materials and

perform the work in accordance with the drawings and specifications made by an architect and signed by the parties and annexed to the contract.

As provided by the contract, the said contractors gave a bond to the plaintiff with the defendant as a surety in the penal sum of $20,000 upon condition "That if the said John Maher & Son shall well and truly do and perform all and singular the covenants and conditions in the said contract contained on their part to be done and performed then this obligation to be void otherwise to remain in full force and effect."

The contractors proceeded with the execution of the contract, but after a part performance they wholly failed to further perform the contract and went into bankruptcy. Pursuant to a provision of the contract, the plaintiff proceeded to complete the same. This action is brought by the plaintiff against the defendant as the surety on said bond, alleging that the cost of completing said contract, including the payments made thereon to John Maher & Son pursuant to the terms of the contract before they abandoned the same, was $22,543.10 over and above the said contract price, and judgment was demanded against the defendant for $20,000. A trial was had and a verdict obtained in favor of the plaintiff against the defendant for $18,355.02. An appeal was taken from the judgment entered upon such verdict to the Appellate Division, where the same has been unanimously affirmed.

The pleadings, including an amendment to the complaint properly allowed by the court on motion of the plaintiff at the beginning of the trial, presented issues to be determined between the parties. The verdict of the jury thereon having been unanimously affirmed by the Appellate Division, there is not now before us any question either as to the weight or probative force of the testimony. Many of the questions discussed by the counsel for the appellant involve, in whole or in part, questions of fact not now before us for determination, or even consideration. There is left for our consideration only questions arising from adverse rulings upon the admis-

sion or exclusion of evidence to which an exception has been duly taken, or exceptions to erroneous charges or refusals to charge by the court in presenting the case to the jury.

The defendant objected to testimony being received to show that the plaintiff had paid to the contractors $1,000 and $1,226.05 respectively and to the same being allowed as payments on account of the cost of said building and such objections are sufficient to raise the question in this court as to whether such payments were properly allowed and also whether the making of such payments resulted in a general and complete cancellation of the surety's obligation.

The defendant also properly objected to the testimony relating to the first five payments made by the plaintiff to the contractors, and it is claimed by the defendant that such payments were not made in accordance with the terms of the contract because the certificate of the architect was not in accordance with the provisions thereof. Such questions, not including the objections to the testimony and exceptions taken to the rulings thereon, are shown by the following statements from the contract and the evidence:

By the contract it is provided that the consideration thereof as named is "Payable in manner following: 80% of each $10,000.00 worth of work done, the last payment of $10,000.00 to be made 30 days after full completion and acceptance of the building. Provided that in each of the said cases a certificate shall be obtained from and signed by the said architect."

On September 4, 1903, the architect gave a certificate as follows: "This is to certify that John Maher & Son are entitled to first payment as per contract for new building for St. John's College, Fordham, N. Y. City, $8,000.00." A similar certificate was given for the second payment, October 16, 1903; for the third payment, November 20, 1903; for the fourth payment, December 7, 1903; and for the fifth payment, December 22, 1903. John Maher & Son were paid on said certificates by the plaintiff in the aggregate $40,000.

On the 9th of January, 1904, the plaintiff paid John Maher

& Son $1,000. The treasurer of the corporation testified that he made the payment " Upon the authority of the president of the corporation, to save the man from going to the wall, to try to save him. We knew at that time that he had a lot of work done, and he had written a letter showing his condition and the position of things at that time, and in order to save him from failing, in order that he might have money to pay his wages to his men, the president of the corporation authorized me to make the payment of a thousand dollars. * * * Q. Do you know of anything in the contract that authorized you to make a payment under those circumstances? A. It was simply to help the indemnity company. If we could save them from failing, we wanted to do it, because he had a lot of work done, and would be entitled to a thousand dollars in a few days."

It also appears that on the 31st day of January, 1904, the plaintiff paid $1,226.05 to be used in payment of workmen of the contractors. The treasurer of the plaintiff testified : " It was not on account of any particular payments under the contract; there were labor troubles, and we had to pay simply to save money, because in a similar case the city was obliged to pay double the price for the labor for keeping the men waiting for a few days. Q. Was this payment of $1,226.05 on account of any of the payments provided for by the contract ? A. Specifically, no. * * * That was one of the things we were forced to do where we had very little discretion, but I did it under what I considered moral compulsion to pay the workmen."

Both of these payments were allowed to the plaintiff and charged as payments made to John Maher & Son on account of the cost of said building, and were so taken into consideration by the jury in determining the amount of the verdict.

As we understand the argument of the defendant in opposing the allowance of all payments to the contractors, it is that the owner before making any payment to them should have received from the architect a certificate setting forth the amount of work done and materials furnished by the contractors,

to show in detail a basis for such certificate, and that without such statement included in or accompanying the certificate it does not comply with the terms of the contract or justify a payment thereon. We do not agree with such contention. We are not considering whether the form of the certificate given by the architect did not permit of guesses and even of fraud by him. The question now is simply whether the certificate given complies with the contract. It was undoubtedly necessary for the architect to act in good faith between the parties, and loyalty towards the owner required him to ascertain by reasonable computation or estimate in advance of giving the certificate the amount of work done and materials furnished upon which to base such certificate pursuant to the contract. The contract itself is very meagre in its provisions as to what shall be certified by the architect. By the contract, payment of eighty per cent of the work done is to be made as each $10,000 of work is done, and in each such case the architect is to give to the owner a certificate signed by him. The contract can have no other meaning than that the certificate to be signed by him shall state in words or substance that $10,000 of work has been done. The certificate given by the architect stated that the contractors are "Entitled to first payment as per contract," and fixes the amount of the payment at $8,000. It was a fair compliance with the provisions of the contract. ( *Wyckoff* v. *Meyers*, 44 N. Y. 143.) If either of the parties to the contract or the bond desired that the certificate of the architect should state in detail the work done and materials furnished as constituting work done within the terms of the contract, the one desiring it should have insisted upon its being so stated in the contract or in the bond relating thereto. We think that no error of law was committed by the trial court in connection with the testimony relating to the first five payments. We have treated the question as to the architect's certificate from the viewpoint of the appellant, which is that the owner cannot waive the certificate of the architect even if it appears affirmatively to him and upon the trial that the work has been actually done in

accordance with the terms of the contract. We have not overlooked, and we do not mean to discredit the decision of this court in *Smith* v. *Molleson* (148 N. Y. 241), which held that the certificate of the architect in the matter of the contract then under consideration could be waived without affecting the obligation of the surety.

The appellant invokes the rule that any material alteration of the terms of a contract for whose performance a surety is bound when made without his consent releases him from his obligation as such surety. Such is the rule in this state. (*Page* v. *Krekey*, 137 N. Y. 307; *Smith* v. *Molleson*, 148 N. Y. 241.) If the parties to the contract had agreed to an alteration of the terms of payment by which the amount due the contractors, but remaining in the hands of the owner from time to time, would be reduced, it might be claimed with reason that the change was such a material alteration of the surety's obligation that it would not be liable upon the bond. The amount provided by a building contract to be retained by the owner from the value of the work actually done until the final completion thereof is a material safeguard against a failure by the contractors to complete the contract. In this case there was no alteration of the contract itself. A new contract was not substituted for the old one. The two payments mentioned were made without reference to the contract and without any change or modification therein. An advance payment upon the contract by an owner to a contractor may, in the same way, remove from the contractor a material incentive to his completion of the work. While an advance payment by an owner upon a building contract is not strictly an alteration of the contract itself, it is an act which may be so antagonistic to the interests of the surety and the obligation assumed by him as to relieve him from further obligation to the owner upon his contract of suretyship. If money is given to a contractor or for his benefit by an owner, in advance of a payment becoming due upon a contract as a temporary loan, or for a special purpose, the amount thereof and the circumstances of the

payment should be considered in connection with the obligation of the surety. The rule of strict construction is liable at times to work a practical injustice and it ought not to be extended beyond the reason for the rule, particularly when the surety is engaged in the business of becoming surety for pay and presumably for profit. (*U. S. F. & G. Co.* v. *United States,* 191 U. S. 416.) In this case it appears affirmatively that the $1,226.05 was not an advance payment on account of the contract, but a voluntary payment to the employees of the contractor after the contract had been abandoned by the contractors. It was made independently of the contract and to avoid future labor troubles. Such payment cannot, under any rule of law or equity, be said to affect the surety adversely or to have any effect whatever upon the contract or the defendant's obligation.

It also affirmatively appears that at the time the one thousand dollars was paid by the owner the contractors had, subsequently to the fifth payment, performed about $3,000 of work upon the contract. The money was given to the contractors by the owner just one week before the contract was abandoned by them, and although the amount was charged against them, it was like the other payment, made for the purpose of satisfying the employees of the contractors. It was in the nature of a temporary loan for the express purpose of preventing an abandonment of the contract by the contractors and to avoid labor troubles. It was not made simply as a loan for the benefit of the contractors, but also for the benefit of the owner and the defendant in case of a failure on the part of the contractors to complete their work. Such a loan or payment is not within the reason of the rule that prevents a recovery against a surety when his contract has been materially changed. The payments made cannot, under any view that can be taken of them, be said to remove in any degree the incentive that the contractors had prior thereto for completing the contract. If the rule invoked by the appellant is applied in this case it would be both harsh and unjust.

What we have already said in regard to such payments

shows that they should not, as against the defendant, be considered as payments under the contract. It necessarily results from what we have said that the court erred in allowing the testimony as to such payments to go to the jury, and for them to charge the same as a part of the cost of the building in determining the amount for which the appellant is liable. Such payments, made under the circumstances disclosed, and concededly before the sixth payment was due the contractors according to the terms of the contract, were made at the risk of the plaintiff, and are not, so far as the defendant is concerned, a part of the cost of the building. Many other questions are presented to us by the appellant, each of which we have examined with care, but they do not require further consideration in this opinion.

The judgment should be reversed and a new trial granted, with costs to abide the event, unless within twenty days the plaintiff stipulates to deduct from the judgment the sum of $2,226.05, in which case the judgment, as reduced, is affirmed, without costs in this court to either party.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur.

Judgment accordingly.