MUSEUM OF FINE ARTS *vs.* AMERICAN BONDING COMPANY OF BALTIMORE.

SAME *vs.* ILLINOIS SURETY COMPANY.

SAME *vs.* PEOPLE'S SURETY COMPANY OF NEW YORK.

Suffolk.   January 10, 1912. — February 28, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DeCOURCY, JJ.

*Contract,* Construction, Performance and breach, Building contract. *Surety.* Payment. *Bond,* Construction. *Damages,* In contract.

A building contract provided that payments to the contractor should be made by the owner upon the architect's estimates and certificates and only to the extent of ninety per cent of the amount thereby shown to be due to the contractor. The contractor gave a bond with sureties conditioned upon the performance of the contract. While the work still was unfinished the contractor lacked sufficient funds to pay his employees and at his request the owner lent to him $5,000 and received from him a note secured by an agreement that the owner might apply toward payment of the note any sum that thereafter should become payable to the contractor under the contract. The sum lent to the contractor was in excess of what then was due him, and no architect's certificate was asked for or given before it was made. The contractor used the money so borrowed to pay for labor and materials in carrying out the contract. He later failed to complete the contract and the owner was obliged

to do so.   In an action against the sureties on the bond it was *held,* that the loan to the contractor was an independent transaction and not a payment under the contract in violation of its terms and therefore that it did not relieve the sureties from liability *pro tanto; and also* that the paying of money to the contractor as a loan was not the result of a breach of the contract by the contractor and therefore that the sureties were not liable to the owner on that account.

A building contract provided that the contractor was to act as superintendent of the work without compensation and that, in case of failure and refusal by the contractor to complete performance of the contract, the owner might complete it at the contractor's expense.   A bond with sureties was given by the contractor conditioned upon performance of the contract.   The contractor having refused to complete the contract, the owner undertook its completion and, it being necessary to employ a superintendent, employed the contractor as superintendent at a stipulated salary.   Afterwards it was agreed in writing between the owner, the contractor and the sureties that the contractor should act as superintendent, but the agreement contained no stipulation as to a salary being paid to the contractor.   In an action against the sureties on the bond, it was *held,* that under the circumstances the employment of the contractor as superintendent did not discharge the sureties from liability, and that they were liable for sums so paid him by the owner as salary for superintendence.

Under a bond with sureties conditioned upon performance by a contractor of a building contract which, among other things, provided that if the contractor failed or refused to complete the contract the owner might complete it at the contractor's expense, premiums, paid by the owner for insurance against his liability to employees or other persons engaged in completing the building under his management after the contractor has defaulted, are a necessary and proper expense incident to such completion of the work and are properly charged against a surety on the bond.

A surety upon a bond, given by a contractor to the owner of land upon which the contractor had agreed in writing to erect a building for the owner and conditioned upon performance of the contract by the contractor, cannot be held liable, after default by the contractor, for premiums upon the bond which were paid by the owner to the surety company after the default where it appears that the owner and the contractor had agreed that the owner should pay premiums upon the bond, nor for expense incurred by the owner in causing books kept by the contractor to be audited.

THREE ACTIONS OF CONTRACT upon a bond given by one Ambrose B. Stannard and five surety companies, three of whom were, respectively, the defendants, conditioned upon the faithful performance by Stannard of a contract for the construction of the Museum of Fine Arts on Huntington Avenue in Boston.   Writs dated March 21, 1910.

The cases were referred to Charles E. Shattuck, Esquire, as auditor.   After the filing of the auditor's report they were heard together by *Lawton,* J., without a jury.   The material facts are stated in the opinion.

At the close of the evidence the defendants in the respective actions asked for the following rulings:

" (1) On all the evidence the plaintiff is not entitled to recover on its first count.

" (2) On all the evidence the plaintiff is not entitled to recover on its second count."

" (7) Upon all the evidence it appears that if the defendant might otherwise have been liable upon the bond, such liability has been discharged and released by reason of the dealings between Stannard and the Museum of Fine Arts fully set forth in the auditor's report, said dealings being without the knowledge or consent of the defendant surety.

" (8) The loan to Stannard by the Museum of Fine Arts of the sum of $5,000 in consideration of his note for the same amount, said amount not then being due from the Museum of Fine Arts to the said Stannard nor paid to him under the written certificate of the architect as required by the contract, said payment and arrangement being without the knowledge or consent of the defendant surety company, operated as a discharge of the defendant's liability upon the bond and the plaintiff is not entitled to recover on said bond.

" (9) The agreement to pay and the payment to Stannard, without the knowledge or consent of the defendant surety company, of the sum of $1,000 per month for a period of six months and a half, operated as a discharge of the defendant's liability upon the bond and the plaintiff is not entitled to recover on said bond."

" (11) The $5,000 loaned to Stannard by the Museum of Fine Arts in exchange for which his note was taken, cannot, as against this defendant, be charged to the cost of the work.

" (12) Inasmuch as the plaintiff still retains in its possession uncancelled, the note given by Stannard in consideration of the $5,000 loaned to him, said note must be taken to have been received in payment of the loan and as to the amount thereof, the plaintiff's only claim is against Stannard and it is not entitled to charge the amount of said note to the cost of the building.

" (13) The $6,500 paid by the plaintiff to Stannard for his services in superintending the work after it was taken over by the plaintiff, cannot be charged to the cost of the building in view of the fact that in the agreement of June 2, 1908, Stannard agreed

to perform such work without stipulating for any compensation, and further, in view of the fact that such agreement for compensation was made without the knowledge or consent of the defendant surety."

"(15) The amount of $2,040.66 paid as premiums for liability insurance, cannot be charged to the cost of the building and the auditor's ruling to the contrary was erroneous."

The rulings were refused. The judge found that the plaintiff was entitled to judgment in each action in accordance with the terms of the bond, and ordered executions as follows: against the defendant in the first action in the sum of $7,066.29, against the defendant in the second action in the sum of $23,554.30, and against the defendant in the third action in the sum of $14,132.58, with interest in each case from December 21, 1909.

With the consent of the parties, the cases were reported for determination by this court under the following agreement: "If the ruling that the plaintiff is entitled to recover is correct, judgment is to be entered in each case for the penal sum of the bond, execution to issue for the respective amounts found due with interest thereon from December 21, 1909, provided that if as matter of law, any of the items objected to by the defendants should, on the evidence and facts reported, have been disallowed, or if the law and the evidence require or warrant the allowance of either of the additional items claimed by the plaintiff, then in either such case, execution is to issue for such smaller or larger amount as the Supreme Judicial Court shall therefore decide that the plaintiff is entitled to on the law and the evidence. If the plaintiff is not entitled to recover, then judgment is to be entered for the defendant in each case."

*E. F. McClennen,* for the plaintiff.

*E. K. Arnold & F. H. Smith, Jr.,* for the defendants.

SHELDON, J. The defendants contend that their liability has been wholly discharged by reason of the plaintiff's dealing with Stannard. The general principles of law applicable to such a contention are well settled. If the agreement between the plaintiff and Stannard, for the due performance of which by Stannard the defendants severally bound themselves as sureties, was materially changed by the action of the plaintiff and Stannard without the knowledge and consent of the defendants, they would be dis-

charged from any further liability. *Warren* v. *Lyons,* 152 Mass. 310, 312. *Germania Fire Ins. Co.* v. *Lange,* 193 Mass. 67, 69. If without such change the plaintiff gave up or parted with any security which it had from Stannard, or any means of payment to which under its contract it was entitled for the satisfaction of whatever demand might accrue to it against him by virtue of the contract between them or any right which otherwise would have been available to the defendants as an indemnity or a protection to diminish their loss under their respective contracts of suretyship, then their liability would be diminished to the extent of what was thus parted with. They would not be wholly discharged unless the value of what had been given up equalled the total amount of their liability; but they would be relieved *pro tanto.* *Guild* v. *Butler,* 127 Mass. 386. *St. John's College* v. *Ætna Indemnity Co.* 201 N. Y. 335.

The defendants claim that the transaction by which, before Stannard abandoned his contract, the plaintiff advanced to him the sum of $5,000 was in reality a payment made to him of that sum under the contract, made not only before it was due, but really in violation of the provisions of the contract by which payments were to be made upon the architect's estimates and certificates, and upon them only to the extent of ninety per cent of the amount thereby shown. The plaintiff contends that this was not a payment under the contract at all, that it was an entirely independent transaction.

The only evidence upon this question is what appears by the auditor's report. He has not found that the transaction was anything other than what it appears to be on its face. His report sufficiently shows that the reason of Stannard's desire to borrow the money and of the plaintiff's willingness to lend it to him was his lack of sufficient funds to pay his employees. And simultaneously with the execution of the note Stannard gave to the plaintiff a paper by which, as security for the payment of the note, he agreed that the plaintiff might apply to such payment any sum of money, with an immaterial exception, that should thereafter become payable to him under the contract. The money so borrowed was used by Stannard to pay for labor and materials in carrying out his contract. The money was not due to Stannard; it was not paid upon any estimate or certificate of the architect, nor was any

certificate for such payment ever issued by the architect. The note never has been cancelled or delivered back to Stannard, and is still held by the plaintiff. The defendants had no knowledge of the transaction.

In our opinion it must be inferred from these facts that the amount of the note was not, and was not intended by either party to be, a payment under the contract. It has none of the earmarks of a payment. None of the requirements of a payment was observed. No receipt appears to have been given for it as a payment. On the contrary a promissory note payable absolutely on demand was given for it. The note was not made payable out of future instalments to become due to Stannard; his agreement went no further than to authorize the application of such instalments "as security" for the note. There is no finding that either party intended or expected that the note should be paid out of such future instalments to come due to Stannard. Much less is there anything to indicate an agreement or understanding that the plaintiff should look only to his future earnings for the payment of the note. It was negotiable in form, and as we have seen was payable absolutely and not upon any contingency or out of any particular fund. If the plaintiff had chosen to do so, it could have put the note in suit the next day after it was taken, and Stannard would not have been allowed to set up in defense any agreement or understanding that it was to be paid only out of the fund designated as security. *Torpey* v. *Tebo,* 184 Mass. 307. *Wooley* v. *Cobb,* 165 Mass. 503, and cases cited. This was a private loan, like the ones discussed in *Bateman Brothers* v. *Mapel,* 145 Cal. 241, and *St. John's College* v. *Ætna Indemnity Co.* 201 N. Y. 335. It was not tied to Stannard's future rights under the contract, as was the case with the note dealt with in *Fidelity & Deposit Co.* v. *Agnew,* 152 Fed. Rep. 955; and the reasoning of that case is not applicable.

As this transaction was not a payment to Stannard at all, we need not consider whether if it had been such it ought to be treated as a material alteration of his contract so as to discharge the defendants entirely, or whether it would merely relieve them *pro tanto.* See *First National Bank* v. *Fidelity & Deposit Co.* 5 L. R. A. (N. S.) 418, and *Glenn County* v. *Jones,* 2 Am. & Eng. Ann. Cas. 764, and the notes to these cases for a collection of the conflicting decisions. Nor need we consider what would be the effect of the

provision in this contract that "no over certification or [over] payment, if any, shall make void any bond that may be given by the contractor."

But the defendants are not to be held liable for the amount of this note. *St. John's College* v. *Ætna Indemnity Co.* 201 N. Y. 335. The fact that the money was used by Stannard for the purposes of the contract cannot make them so liable. It is for his defaults, not by reason of the proper performance of his obligations, that they are to answer. All the labor and material that he supplied have gone to their benefit, in that he thereby has diminished the amount of the liability to which otherwise they might have been subjected, and his use of the money comes under the same rule. Moreover, the plaintiff still holds the note against Stannard, and we do not know that it will not be paid by him. It was not a part of the cost of the building to the plaintiff, but an investment made by the plaintiff in Stannard's paper. It follows that the amount upon which the respective liability of the defendants was based must be reduced by $5,000.

After Stannard's default upon his contract the plaintiff employed him as superintendent, and on May 29, 1908, agreed to pay and afterwards did pay him therefor a salary of $1,000 a month, amounting to the sum of $6,500. By a supplementary agreement dated June 2, 1908, between the plaintiff, Stannard and the defendants, it was agreed that he should continue to superintend the work, and there was no stipulation for his compensation. The defendants contend that this payment to Stannard operated to discharge them from their obligation, either wholly or at least *pro tanto.* It may be assumed that under the original and supplementary agreements Stannard was bound to act as superintendent without compensation. But he declined to do so, and for the consequences of this default the defendants are chargeable. On the facts found by the auditor, the plaintiff properly employed a superintendent; it had a right to employ Stannard himself; *Newton* v. *Devlin,* 134 Mass. 490; it was not bound by agreement or otherwise to notify the defendants of its action. *Wakefield* v. *American Surety Co.* 209 Mass. 173. The ruling as to this was correct.

As to the amount paid by the plaintiff for premiums upon policies of insurance against its liability to employees or other persons engaged in the work of completing the building, the auditor found

that this was a necessary and proper expense, and there is nothing to control that finding.   It was a necessary expense, resulting directly from Stannard's default, for which the defendants had agreed to be liable.   There was no error in the ruling on this question.

The sum of $1,900 paid by the plaintiff to the defendants for renewal premiums rightly was disallowed.*   These premiums from the beginning were to be paid by the plaintiff.   The sum paid for the audit of Stannard's accounts also was rightly dealt with. This was not an expense caused by his default.   So far as it was an expense incidental to the making of the loan to him, it can stand no better than the loan itself.

There is no occasion to consider in detail the requests which were made for rulings.   So far as these were refused they are covered by what has been said.

In accordance with the terms of the report, judgment must be entered in each case for the penal sum of the bond sued on, and execution is to issue against the American Bonding Company of Baltimore for $6,549.04; against the Illinois Surety Company for $21,830.16; and against the People's Surety Company of New York for $13,098.09; in each case with interest from December 21, 1909.

*So ordered.*

---

* Premiums upon the bond by agreement between the plaintiff and the contractor were to be paid by the plaintiff.   The premiums in question were paid by the plaintiff after the contractor had abandoned the work and the plaintiff had taken it over to complete it and before the work was completed.