ERNST v. FIDELITY & DEPOSIT CO. OF MARYLAND et al.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 101.

1. INDEMNITY ⬅⟶12—DISCHARGE OF INDEMNITOR—CHANGE OF CONTRACT.

A railroad company agreed to pay a contractor for building a railroad $120,000 in stock and $300,000 in bonds, the contractor to furnish a surety bond. A surety company agreed to give such bond, provided the railroad bonds were deposited with it, to be delivered to the contractor in payment for work done, and provided, also, that $50,000 be deposited with it as indemnity against loss. The railway company delivered to the contractor the stock and bonds and $70,000, with an understanding that any bonds remaining after completion of the road were to be returned. The bonds were deposited with the surety company, and $50,000 delivered to it as indemnity. A second contract between the contractor and the railway company, of which the surety had no notice, provided for payment to the contractor of the actual cost, plus a profit of 15 per cent., the sum of $70,000 to be deducted, and such of the bonds as exceeded the balance of the construction cost returned. On the contractor's default the surety company completed the work under a contract with the surety for the railroad bonds and such of the stock as had not been disposed of by the contractor. Held, that the railroad company had no rights under the second agreement with the contractor against the surety company, and such contract did not change the first contract, but merely provided a means for determining the number of bonds returnable upon completion of the contract; and hence the indemnitor was not discharged, on the theory that the surety company contracted with the railroad company on different terms than the contract between the railroad company and the contractor.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 26, 27; Dec. Dig. ⬅⟶12.]

2. INDEMNITY ⬅⟶12—DISCHARGE OF INDEMNITOR—CHANGE OF CONTRACT.

That a contractor's surety, which completed a contract upon the contractor's default, executed an additional contract with the other party to the contract, did not discharge one that had agreed to indemnify it, if the contract made no material change prejudicial to the indemnitor.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 26, 27; Dec. Dig. ⬅⟶12.]

Appeal from the District Court of the United States for the Southern District of New York.

A. B. Boardman, of New York City, for appellants.
H. S. Dottenheim, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is an appeal from a decree of the District Court for the Southern District of New York for $50,000 in favor of the plaintiff, as trustee in bankruptcy of the McCord Contracting

Company, against the defendant, the Fidelity & Deposit Company of Maryland.

[1] On or about December 8, 1911, the Elberton & Eastern Railway Company, a corporation of the state of Georgia, entered into a contract with Ira L. McCord, a citizen of the state of New York, whereby the latter agreed to build a single track railroad about 21 miles long from the city of Elberton to the town of Signall, both in the state of Georgia, and the railway company agreed to pay therefor $420,000 in $120,000 of its full-paid capital stock and $300,000 of its first mortgage bonds, McCord to furnish the company with the bond of a surety company acceptable to it in the sum of $80,000 for the faithful performance of the contract. This contract will be called Exhibit A.

The defendant, the Fidelity & Deposit Company, a corporation of the state of Maryland, agreed to give the bond, provided the $300,000 of bonds were deposited with it, to be delivered to McCord in payment for work done at 85 per cent. of their par value upon certificates of the railway company's chief engineer, and provided, also, that $50,000 in cash be deposited with it as an indemnity against any loss under the bond. On the same day, to carry out the negotiation, the railway company advanced $70,000 in cash to McCord, and delivered to him $120,-000 of its capital stock and $300,000 of its first mortgage bonds. He deposited the bonds with the surety company, accompanied by a letter directing it to deliver the same in the manner above stated, any bonds remaining after the completion of the road to be delivered to the railway company. This letter will be called Exhibit B. At the same time McCord paid $50,000 to the McCord Contracting Company, which immediately deposited the same with the surety company as collateral, to be returned, so far as not needed as indemnity, to it, in accordance with the terms of an indemnity bond executed by it to the surety company. This bond will be called Exhibit C.

On the same day the surety company delivered its bond in the sum of $80,000 to the railway company. This bond will be called Exhibit D.

On the same day McCord and the railway company entered into an agreement, of which the surety company had no notice, which ratified and confirmed Exhibit A, recited the advance by the railway company to McCord of $70,000, and the deposit of the $300,000 of bonds with the surety company as above stated. This contract will be called Exhibit E. Article 4 reads as follows:

"Fourth. It is mutually understood and agreed that, upon the completion of the undertaking of the contractor under the said construction contract, a statement shall be rendered by the contractor to the company, showing the actual cost of all labor, materials, and incidentals entering into and pertaining to the cost of the construction and equipment of the said part of the company's railroad, to which shall be added a profit to the contractor of fifteen per cent. (15%). The sum thus arrived at shall be taken as the actual cost of the construction and equipment of said part of said railway.

"From the cost of said part of said railway, arrived at in the manner stated, the contractor shall deduct the sum of seventy thousand dollars ($70,000), and for the remainder of said cost the contractor shall retain a sufficient amount of the first mortgage bonds of the company which, at 85% of the par value thereof shall equal the said remainder of construction cost, and all other first mortgage bonds of the company shall be forthwith returned to the company, or delivered upon its order."

On or about April 5, 1912, after work to the amount of $6,000 had been done, McCord notified the surety company that he was unable to continue and would abandon the work. April 16th the surety company exercised the option given it in Exhibit D to complete contract. Exhibit A, and entered into an agreement with the railway company whereby the railway company, waived any rights it might have as against the surety company under Exhibit E, which then for the first time came to its knowledge, and the surety company agreed to perform Exhibit A for the $300,000 of bonds deposited with it and $15,000 of the $120,000 of capital stock of the railway company not disposed of by McCord. The $50,000 received from the McCord Contracting Company as collateral was naturally not mentioned. This contract will be called Exhibit H. On or about April 30th an involuntary petition in bankruptcy was filed against the McCord Company, and it was adjudicated a bankrupt on or about June 19th.

The surety company thereupon did complete contract Exhibit A to the entire satisfaction of the railway company. March 24, 1913, the plaintiff, as trustee in bankruptcy, began this suit to recover the $50,000 deposited from the surety company. The surety company having moved to dismiss the complaint, Judge Noyes held that it had made a new and different contract from Exhibit A in Exhibit H, and so had discharged the McCord Company, its indemnitor, and lost its right to retain the $50,000 deposited with it. He said:

"As already shown, the real contract between the parties was that contained in Exhibit A, as changed by Exhibit E. This is recognized expressly in Exhibit H. Under this modified contract payment was—as we have seen—to be made on a cost and percentage basis. But under the agreement, Exhibit H, by which the defendant undertook to complete the work, the performance of Exhibit E was waived, and the defendant agreed to do the work for a fixed price, viz., $15,000 in stock and $300,000 in bonds. This in my opinion was a new and independent contract. I am unable to reach any other conclusion than that Exhibit A was modified by Exhibit E, and that Exhibit E was none the less modified by Exhibit H, because the provisions of the last agreement approximated those of the first."

At final hearing Judge Mayer, following this view, entered judgment in favor of the complainant.

[2] In our opinion Exhibit E was not a departure from Exhibit A. On the contrary, it affirmed Exhibit A in express terms. The only doubt is raised by article 4, supra. But this we think was introduced to supply a means whereby to determine the number of bonds, if any, returnable upon completion of the contract to the railway company on account of the advance of $70,000. In order to do so, it would be necessary to calculate the cost of building the railroad. While it is not apparent to us why 15 per cent. on the actual cost was to be added as profit to McCord in making this calculation, we are clear that the parties did not intend to alter Exhibit A, or to make the contract one of cost plus percentage, which might impose a liability upon the railroad far in excess of the consideration agreed upon in Exhibit A. The mere fact that the surety company executed an additional contract with the railway company does not discharge its indemnitor, if that contract made no material change prejudicial to it. Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669; St. Johns College v. Ætna Indemnity Co., 201

N. Y. 335, 94 N. E. 994. The surety company completed, to the satisfaction of the railway company, McCord's contract, Exhibit A, faithful performance of which it had guaranteed, for what was left of the consideration paid to him by the railway company, viz., $15,000 of the $120,000 of its full-paid capital stock and $300,000 of its first mortgage bonds. When it delivered its bond, Exhibit D, it had no knowledge of the existence of Exhibit E. Although that came to its notice before it entered into the agreement, Exhibit H, the railway company had no possible right under Exhibit E against the surety company. While the mention of it in Exhibit H does create confusion, we think it in no respect altered Exhibit A, or the surety company's rights and duties under Exhibit D. If upon an accounting it shall appear that the $50,000 deposited as indemnity, or any part of it, was not necessary for the protection of the surety company against loss, then it, or so much of it, must be returned to the trustee of the McCord Company, the bankrupt indemnitor.

The decree is reversed, with costs, and without prejudice to further proceedings in accordance with this opinion.