OPINION OF THE COURT
Joseph P. Kuszynski, J.
Plaintiff Buffalo Slag Company, Inc. (Buffalo Slag) moves pursuant to CPLR 3212 for summary judgment to recover *213 from defendants H & D Construction Company, Inc. (H & D) and United States Fire Insurance Company (U.S. Fire) the sum of $16,134.69 paid by the State of New York to H & D and to which plaintiff Buffalo Slag claims it is entitled. Defendant U.S. Fire cross-moves for summary judgment upon the grounds the moneys in question are not covered by the labor and material bond U.S. Fire had issued and also, that plaintiff’s action is barred by the Statute of Limitations as set forth in section 137 of the New York State Finance Law.
The facts giving rise to this litigation are uncontroverted. H & D entered into a contract with the New York State Department of Transportation on October 23, 1973 to construct a portion of Homer Street in Olean, New York. Simultaneously, U.S. Fire furnished a labor and material bond for the State in the amount of $612,062 with H & D as principal.
Subsequently, on or about March 12, 1974 Buffalo Slag agreed to provide H & D with asphalt materials for the project and the contract period was specified to be from March 12, 1974 to December 30, 1974. It appears, however, that some deliveries were made by Buffalo Slag after the termination date, the last having been made on July 16, 1975.
The New York State Legislature on June 13, 1974 enacted special legislation granting relief in the amount of a 15% escalation in price to contractors, subcontractors and material-men on State road construction projects who furnish petroleum based products including asphalt, under contracts based upon bids submitted prior to December 31, 1973. (See L 1974, ch 944, as amd by ch 945.)
Thereupon, Buffalo Slag requested H & D to prepare and submit the necessary forms so that the relief provided for in the statute could be made available to Buffalo Slag. In the application, the additional funds were requested for the asphalt products provided by Buffalo Slag to H & D in the period between May 1, 1974 and November 15, 1974. On submission of the forms, the State approved the additional statutory allowance and forwarded checks in the amount of $16,134.69 to H & D on or about February 9, 1976.
Allegedly, H & D never remitted these funds to Buffalo Slag and eventually filed for bankruptcy. Buffalo Slag then commenced this action on July 14, 1976.
Clearly, plaintiff Buffalo Slag is entitled to summary judgment on its action set forth in the complaint against H & D, which has not appeared to oppose this motion.
*214 In the moving papers Buffalo Slag maintains its suit is brought within the one-year Statute of Limitations set forth in section 137 of the State Finance Law. The applicable portion of section 137 reads: "4.(b) No action on a payment bond furnished pursuant to this section shall be commenced after the expiration of one year from the date on which the claimant performed the last of the labor or furnished the last of the material for which such action is brought, except that if the claimant is a subcontractor of the contractor, no such action shall be commenced after the expiration of one year from the date on which final payment under the subcontract became due.”
Buffalo Slag’s rationale is that the Statute of Limitations began to run on or about July 16, 1975, which coincides with the date of its last delivery to H & D. It cites Federal cases under the Miller Act (US Code, tit 40, §§ 270a-270d) in support of its proposition.
U.S. Fire takes the position that the one-year Statute of Limitations began running the day Buffalo Slag last delivered materials "for which such action is brought”, that is November 15, 1974 which is the closing date listed in Buffalo Slag’s application to the State for the escalation funds here in contention.
This court concludes that the Statute of Limitations provided for in section 137 of the Finance Law had expired on November 15, 1975, one year after the last delivery of materials for which plaintiff sought the extra compensation under the relief legislation.
In the complaint Buffalo Slag contends that the diversion of the escalation funds by H & D occurred "with the full knowledge and consent of the Surety named in this action”. This conclusory statement is nowhere amplified in Buffalo Slag’s supporting papers, other than to say that the plaintiff notified U.S. Fire in January, 1976 that an application had been made to the State for the escalation funds.
The defendant, U.S. Fire further maintains that, as surety, it is not liable under its labor and material bond because the claim asserted by Buffalo Slag was not encompassed by the bond.
By the terms of the bond instrument dated October 23, 1973, H & D as principal and U.S. Fire as surety were "firmly bound unto the People of the State of New York * * * in the full and just sum of Six Hundred Twelve Thousand, Sixty-two *215 and 00/100 ($612,062.00) Dollars.” The condition of the obligation was "such that if said principal shall promptly pay all moneys due to all persons furnishing labor or materials to him or his subcontractors in the prosecution of the work provided for in said contract, then this obligation shall be void, otherwise to remain in full force and effect.”
Other than the 15% additional compensation created by legislative fiat after the bond had been given, the asphalt materials furnished by Buffalo Slag have been paid for in full in accordance with its sales contract with H & D. U.S. Fire maintains that because the statute providing the additional payment to asphalt materialmen was passed subsequent to the time of the contract bonded by U.S. Fire, the additional compensation was not part of the contingency covered by the principal contract, and the failure by H & D to remit these funds does not impose liability on U.S. Fire.
"The rule that the liability of a surety is strictissimi juris, that is, that his liability is to be strictly construed, does not in any sense mean that a suretyship contract is subject to rules of interpretation different from those applicable to any other contract.” (57 NY Jur, Suretyship and Guaranty, §§ 104, 69, 70.)
While the rule of strictissimi juris has been applied stringently in New York State (see Becker v Faber, 280 NY 146), this rule and other defenses available to a surety have been modified in cases involving compensated sureties and surety companies (10 Williston, Contracts [3d ed], § 1213). In such cases, if a defense turns upon the construction of a provision of the contract, the rule of strict construction of the contract in favor of the surety may be relaxed, but not extended beyond the reason for the rule, or the point where it is liable to work a practical injustice. (57 NY Jur, Suretyship and Guaranty, § 393; St. John’s Coll, v Aetna Ind. Co., 201 NY 335.)
The legislated 15% price increase for asphalt products suppliers, enacted some four and one-half months after the contract was signed and the bond given was not contemplated by the surety U.S. Fire when issued. The obligation on the bond is limited to $612,062, the face amount of the bond.
To adopt plaintiff Buffalo Slag’s contention would be tantamount to increasing the burden of the surety’s obligation by an additional amount conceivably as large as $91,809.30, i.e., 15% of the original contract price, to which the surety had *216 not consented nor for which it was correspondingly compensated. It is concluded that U.S. Fire should not be held responsible for a greater obligation than is stated in the bond.
Submit order granting plaintiffs Buffalo Slag Company’s motion for summary judgment against defendant H & D, denying its motion for summary judgment against defendant U.S. Fire, and granting the cross motion for summary judgment dismissing the complaint as to United States Fire Insurance Company.