GEORGE A. HAWKINS, Appellant, *v.* FREDERICK A. M. BURRELL, Respondent, Impleaded with Others.

*Lien of a sub-contractor — not enforcible where the contractor abandons the work and the owner completes it — the percentage payable to the contractor as the work progresses, how computed.*

Where a building contract provides that the contract price shall be paid "in manner following: As the work proceeds a sum equal (in the opinion of the architect) with previous payments to eighty per cent of the value of work done and the balance of twenty per cent when the work is completed and accepted by the architect," and the contractor abandons the work after having been paid one-half of the contract price and the owner completes the work, a sub-contractor acquires no lien upon the twenty per cent which was to be paid when the work was completed and accepted by the architect, as such sum never became due under the contract.

*Semble,* that under such a contract the eighty per cent payable to the contractor during the progress of the work should be computed, not upon the actual cost of the labor and material performed and furnished by the contractor, but upon the value of such labor and materials in relation to the contract price.

APPEAL by the plaintiff, George A. Hawkins, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 30th day of April,

1901, upon the decision of the court rendered after a trial at the Kings County Special Term.

*William M. Sullivan* and *John R. Kuhn* [*George V. Brower Horatio C. King, John J. Kuhn, Shirley & Smith* and *John E. Roeser* with them on the brief], for the appellant.

*John H. Kemble* and *John Z. Lott,* for the respondent.

HIRSCHBERG, J. :

This is an action to foreclose a mechanic's lien filed by the plaintiff as a sub-contractor against some premises in Brooklyn whereon the defendants A. & E. Gariepy were under contract to construct a house for the owner, the defendant Burrell. The contract for the erection of the building was executed on the 20th day of April, 1900, and required the contractors to do the work and furnish the materials for $20,176, and to complete the contract on or before the 15th day of December, 1900. No time was specified for payments, but the contract contemplated that payments would be made from time to time provided a certificate should be obtained from the architect to the effect that payments were due; the provision for payment being that the owner would pay the contractors the $20,176 "in manner following: As the work proceeds a sum equal (in the opinion of the architect) with previous payments to eighty per cent of the value of work done and the balance of twenty per cent when the work is completed and accepted by the architect."

The plaintiff's lien was filed on the 15th day of October, 1900, but the contractors had quit the job and abandoned the work ten days before. They had then been paid $10,500 on the contract, and it cost the owner $9,651 to complete the building, making a total of $20,151 or $25 less than the contract price. The learned trial court allowed this small item for the benefit of the plaintiff, and also an item of $125 for extra work performed by the contractors, but the plaintiff appeals from the judgment, and asserts that there was due to the contractors at the time the lien was filed a considerable sum in excess of the amount which had then been paid to them, and that to such excess his lien attaches.

The case, however, was correctly decided. The contract was broken by the contractors, not by the owner. It appears that the

contractors had overlooked some items in making their estimate, and they found in September that it would cost them $24,000 to do the work. They notified the owner of that fact and that they could not and would not complete the contract unless the price was raised. They were willing to complete the work for $24,000 or for whatever it might actually cost them, but not otherwise. One of the firm testified, " we wanted the contract price increased that much or else we would finish at net cost without anything for us into it. They would not consent to do that and then we quit." Under such circumstances the sub-contractor could have no lien upon the twenty per cent retained, because it never became due under the contract. (*Kelly* v. *Bloomingdale,* 139 N. Y. 343.)

But the plaintiff claims, as I have said, that more was due the contractors than they had been paid at the time of the filing of the lien, and it may be that, if that be so, the lien attaches. (*Foshay* v. *Robinson,* 137 N. Y. 134.) This claim rests on the contention that the eighty per cent mentioned in the contract should have been computed upon the actual cost of the labor and materials performed and furnished by the contractors, and not upon the value of such labor and materials in relation to the contract price. The contention is unsound. The contract price fixes the value of the completed work, and eighty per cent of the " value of work done " as the work proceeds relates to the value of such partial work as measured by the value of the completed work. On any other theory the contractors might be entitled to the entire contract price in the middle of the work, provided they were doing the work at such a loss as to make eighty per cent of what the work then cost them equal to the entire contract price. Such a construction of the contract would be unreasonable, if not absurd. In any event no payment was required without the architect's certificate; such certificate was refused because in the opinion of the architect no payment was due, and the final result has shown that the payments which were made amounted to a little more than eighty per cent of the value of the work done on the basis herein suggested as correct.

The judgment should be affirmed.

All concurred.

Judgment affirmed, with costs.