ST. JOHN'S COLLEGE, FORDHAM, v. ÆTNA INDEMNITY CO.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

1. PRINCIPAL AND SURETY (§ 117*)—RELEASE OF SURETY—BUILDING CONTRACTS.

   A surety on a building contract, providing that, when the work done amounted to $10,000, the owner should pay 80 per cent. of that amount on certificate of the architects, is not released by the act of the owner in paying the contractor $1,000 when $3,000 worth of work was done, as there was no prejudice to the surety.

   [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 284; Dec. Dig. § 117.*]

2. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

   The admission of objectionable evidence is harmless, where the same facts are shown by unobjectionable evidence.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

Appeal from Trial Term, New York County.

Action by St. John's College, Fordham, against the Ætna Indemnity Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Carlisle Norwood, for appellant.
Henry K. Davis, for respondent.

SCOTT, J. Defendant appeals from a judgment for plaintiff entered upon a verdict, and from an order denying a new trial.

The plaintiff made a contract with the firm of John Maher & Son to furnish the labor and material necessary for the erection of, and to erect, a building at the agreed price of $99,250. The contract provided that the price should be paid in installments of 80 per cent. of each $10,000 worth of work done; the last payment to be made 30 days after the full completion and acceptance of the building. It was further provided that in each case of payment a certificate should be obtained from and signed by the architect. The defendant became surety that Maher & Son, the contractors, would faithfully perform their contract. On January 16, 1904, the contractors abandoned the work. They had then done work worth about $53,000 at contract prices and had been paid $41,000. Plaintiffs also paid out, after the default of the contractors, $1,226.05 to the laborers employed by the contractors for wages earned before the default, but left unpaid by the contractors in consequence of their failure. The notices to the contractors and their surety, called for by the contract, were duly given, and the surety for a time appears to have considered completing the contract itself, but finally declined to do so. The plaintiff then went on and completed the work itself under the supervision of its own architect and superintendent. It did not make a new contract for the whole unfinished work, but employed labor and purchased material, dealing in the main with the same persons with whom Maher & Son had made

contracts for material, etc. The jury found that it cost plaintiff $18,-355.02 over and above the original contract price to complete the work, and for this sum a verdict was rendered.

The defendant put in no evidence, and did not sum up, letting the verdict go practically by default, and relying upon its exceptions to obtain a reversal of the judgment and a new trial. The complaint did not contain any allegations of performance by plaintiff on its part of the conditions of the contract with defendant. This was corrected by amendment at the trial; the plaintiff being allowed to insert the general allegation of performance in the form permitted by section 533, Code Civ. Proc. The defendant, however, goes further, and insists that the complaint should affirmatively state that every payment amounted to no more than 80 per cent. of the work done, and that the architect's certificate was, in each case, signed before payment, and that the burden rested upon plaintiff to establish these facts. Its position is that the surety is entitled to insist upon the strictest observance of the terms of the contract between the principal and the contractors, and that the slightest deviation therefrom relieves the surety. Hence it is argued that no installment became due until at least $10,000 worth of work was done, and that the payment of $1,000 when only $3,000 worth of work had been done since the prior payment was a violation of the contract and released the surety. It also claims that the advance of the laborers' wages, although not sought to be recovered, was in violation of the contract.

It relies upon a rule enunciated in Fidelity & Deposit Co. v. Agnew, 152 Fed. 955, 82 C. C. A. 103, in support of which a number of other cases are cited, that:

"The provision in a building or working contract that the contractor or builder shall be paid as the work progressed upon estimates to be made by the supervising architect or engineer, whether a percentage is to be retained therefrom until the whole work is done or not, redounds to the benefit of a surety or guarantor of the party who is to fulfill the contract; and, upon payment being made in disregard of it, there is such a departure from the contract upon which the undertaking of the surety or guarantor is based that he is released. The purpose of such a stipulation is to guard against the consequences of a default in case the principal contract proves a losing one, or the contracting party for any reason fails to comply, the percentage retained, where that is provided for, affording additional security, as well as holding out an incentive, and when it is not observed, and advances or overpayments are made, it is so obviously to the prejudice of the surety that it operates as a discharge as a matter of law."

We are referred to no case in this state in which this rule is upheld in its strictness. The tendency is to give to such contracts a broader, and, as we think, more reasonable, construction. In Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669, the defendant, surety upon a building contract, objected that the principal had paid the contractor without an architect's certificate. The court said:

"The objection that the payments were made without this certificate may be answered in the same way. The owner could dispense with it if he so elected, under the terms of the contract, if not upon general principles, and, since the payments made without it were not greater in amount than upon the true construction of the contract they should have been, if it had been exacted, the omission of the owner to insist upon it did not prejudice the

surety. We are not dealing now with any actual change in the terms of the contract, but with acts or omissions of the plaintiff in the performance which, in order to operate to release the surety, must be of such a character that it can be said that her position was changed to her prejudice."

If it is not such a departure from the contract as will release the surety to make payments without a certificate, neither is it such a departure to pay a percentage upon the amount of work done, before such amount equals $10,000, providing, as seems to be the case here, the amount paid does not exceed 80 per cent. of the work actually done at the time of payment. If there had appeared to be some slight and inadvertent excess in the amount thus paid, the surety could have been amply protected by asking that such excess be credited upon the amount for which it was liable.

The case was a long one, and the record is voluminous. It was defended, as was the surety's right, with the utmost technicality, and the case on appeal bristles with objections and exceptions. We have examined them with care and find nothing which requires reversal of the judgment. The trial took place some five years after the events testified to. Naturally the recollections of many of the witnesses had become dim, and the court was obliged, from the necessities of the case, to freely permit the use of papers, bills, and the like to refresh the recollection of the witnesses. Some testimony, no doubt, was admitted which, upon a strict application of the rules, might well have been excluded; but in every such case, so far as our examination shows, the same facts have been proven by other unobjectionable evidence. The verdict appears to have been a just one, and to have been well supported by the evidence, and we find no errors of sufficient importance to compel a reversal.

Consequently, the judgment and order appealed from are affirmed, with costs. All concur.