(156 App. Div. 258.)

HASTINGS LAND IMPROVEMENT CO. v. EMPIRE STATE SURETY CO.

(Supreme Court, Appellate Division, First Department. April 18, 1913.)

1. CONTRACTS (§ 288*)—CONSTRUCTION—PROGRESS PAYMENTS.

The provision of the contract to do a certain piece of work for $11,000, that "payments will be made monthly on proper certificate of the superintendent (of plaintiff) of the amount of work done to the extent of 80 per cent. of the amount of said certificate," is for payment monthly of 80 per cent. of the superintendent's estimated value of the work done that month, and not merely 80 per cent. of an amount bearing the proportion to $11,000 that the work done that month bears to the whole amount of work called for by the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1308–1310, 1312–1316; Dec. Dig. § 288.*]

2. PRINCIPAL AND SURETY (§ 117*)—DISCHARGE—PROVISIONS OF BUILDING CONTRACT.

A contract for work to be done for plaintiff, making plaintiff's superintendent the umpire to decide the amount of work done as a basis for monthly payments to the contractor during the progress of the work, his decision, in the absence of fraud or palpable mistake, is binding, not only on the contractor, but on the surety on his bond.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. § 117.*]

3. APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR.

The verdict having been for the sum for which, under the undisputed evidence, plaintiff was entitled to a directed verdict, any error in the charge was harmless to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

4. PRINCIPAL AND SURETY (§ 82*)—EXTENT OF LIABILITY—PERFORMANCE BY OBLIGEE.

The surety on the bond of a contractor for work for plaintiff cannot complain that plaintiff, in completing the work, after its abandonment by the contractor, used and paid for material the contractor had ordered and left on the premises; it not being claimed the price was too high.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 127; Dec. Dig. § 82.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. PRINCIPAL AND SURETY (§ 117*) — DISCHARGE — PROVISIONS OF BUILDING CONTRACT..

That, after a contract for work for plaintiff, providing for payment monthly during progress of the work to the contractor, on certificate of plaintiff's superintendent of the amount of work done, to the extent of 80 per cent. of the amount of said certificate, was, with consent of defendant, surety on the contractor's bond, amended by provision that plaintiff should pay for labor and material furnished by the contractor, the amounts so paid to be pro tanto in lieu of said monthly payments, no certificate was made could not be complained of by defendant; the whole 80 per cent., which would have been payable to the contractor, having been paid for labor and materials, so that there was no occasion for making a certificate, the only purpose of which was to fix the amount to be paid the contractor.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. § 117.*]

Appeal from Trial Term, New York County.

Action by the Hastings Land Improvement Company against the Empire State Surety Company. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Affirmed.

See, also, 140 N. Y. Supp. 1123.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Francis B. Wood, of New York City, for appellant.

William R. Bayes, of New York City (W. E. Lowther, of New York City, of counsel, and James Wheatland Smith, of New York City, on the brief), for respondent.

SCOTT, J. The plaintiff made a contract with the O'Connor-McIntire Company for certain work to be done by the latter in paving streets and constructing sidewalks and gutters. The work was to be fully performed for a lump sum of $11,000, and was to be completely finished by the 1st day of November, 1909. The contract contained the following clause:

"(4) Payments will be made monthly upon proper certificate of the superintendent of the amount of work done to the extent of eighty per cent. of the amount of said certificate, and the said party of the second part hereby agrees that the certificate of the said superintendent that the work has been faithfully performed in accordance with the requirements of the contract and these specifications herein contained shall be a condition precedent to the right of the said party of the second part to payment for the entire work or any part thereof due it under this agreement, and the said party of the second part further agrees that twenty per cent. of the amount due under any certificate under this agreement shall be retained by the party of the first part from the amount due to the said party of the second part at the time of making such payment."

It was provided that, if the contractor should abandon the work or in any way violate any of the conditions of the contract, the plaintiff might notify said contractor to discontinue all work or any part thereof, and that thereupon the plaintiff might complete the work itself at the expense of the contractor who bound itself and its bondsmen to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

pay to plaintiff the surplus cost, if any, incurred by said plaintiff over and above the amount agreed to be paid to said contractor for doing the work. The defendant entered upon an undertaking to plaintiff conditioned that the said contractor would faithfully perform the said contract on its part. There were certain conditions attached to the obligation of the surety, one of which was that plaintiff should "retain not less than fifteen per centum of all payments for work performed and materials furnished in the performance of said contract until the complete performance" thereof by the contractor.

The contractor found some difficulty in obtaining sufficient money or credit to carry on the work according to the terms of the contract, and on September 18, 1909, a supplementary or amendatory contract was entered into whereby plaintiff agreed to pay for labor and materials to be employed and furnished by the contractor, the amounts so paid to be pro tanto in lieu of the monthly payments provided to be paid to the contractor under the original contract. It was further provided that these payments for labor and materials should be so limited that the total amount thereof per month, together with the payments to be made monthly upon the proper certificate of the superintendent, as provided for by the original contract should not exceed 80 per cent. of the said certificate as therein provided, "the intention being [so reads the contract] that the amount of the monthly payments may be reduced by the amount paid by the party of the first part for necessary labor and materials as herein provided." This supplementary and amendatory contract was formally consented to by the defendant on October 29, 1909. The plaintiff continued to pay for labor and materials under this last agreement until December 7, 1909, when it found it could pay no more without paying in excess of 80 per cent. of the value of the work done, whereupon it notified the contractor to this effect, and further notified him that he must place more men upon the job and push the work rapidly, and that failure to do so would be considered an abandonment of the contract. No response was made by the contractor, and no further effort made by him to proceed with the work. The answer admits that defendant was duly notified of the contractor's default, but defendant made no attempt to avail itself of the provision of the undertaking authorizing it to proceed with the completion of the work.

The plaintiff did proceed with and completed the work, expending, including the amounts paid under the original and supplementary contracts, a sum exceeding by over $4,000, the agreed contract price. It has recovered a judgment against defendant for the sum of $3,000, with interest, the amount of the undertaking. The answer, as amended at the trial, consists of formal denials on information and belief of parts of the complaint, and of a separate defense that the plaintiff and the O'Connor-McIntire Company made substantial changes in the original contract and the work done and to be done thereafter without the knowledge or consent of the defendant. No evidence was offered to support this separate defense.

[1] The defendant's principal contention is that plaintiff overpaid the contractor, and hence relieved the surety from the obligation of its un-

dertaking. It is by no means clear that the answer presented any such issue (vide Howard County v. Baker, 119 Mo. 397, 24 S. W. 200); but, assuming that it did, the contention is unfounded. The contract provided that payments should be made monthly to the extent of 80 per cent. "of the amount of work done" upon proper certificate of the superintendent (of plaintiff) of the amount of such work. What was done was that the superintendent estimated the value of the work done each month, and the plaintiff paid 80 per cent. of the amount so ascertained. The claim of the defendant is that the superintendent should have measured each month the amount of work done, and that the contractor should have paid 80 per cent. of that proportion of $11,-000 which the amount of work done during the month bore to the whole amount of work called for by the contract. In our opinion the method of estimating the monthly payments to be made to the contractor, as adopted by the plaintiff and its superintendent, was in accordance with the intent of the contract and indeed the only practicable method of arriving at a just result. Howard County v. Baker, supra. It was in accordance with the practical construction given to the contract by both the contracting parties, and was unquestionably adopted and carried out in good faith. If we are right in this construction of the contract, the judgment is undoubtedly just. It is true that the court seems to have adopted an erroneous view of the contract in its charge, and it undoubtedly made a considerable error in the statement of figures. That view was that it was plaintiff's duty to have paid the contractor up to the full 80 per cent. of the whole contract price before calling the contract abandoned, without regard to how much work had been done under it. Taking this view, by way of a second defense quite inconsistent with the first, the defendant says that the plaintiff underpaid the contractor, and therefore that it was the plaintiff, and not the contractor, who defaulted. Again, it may be observed that no such defense is pleaded; but again overlooking that circumstance it is obvious that the defense is without foundation. The original contract provided that plaintiff should pay only 80 per cent. of the amount of work done as the work progressed, and the undertaking required that the plaintiff should retain not less than 15 per cent. of all payments for work performed and materials furnished. So that it was not only plaintiff's right, but its duty, under its contract with defendant, to retain 20 per cent., or certainly 15 per cent., of the sums earned each month for the amount of work done, however that amount was to be ascertained. If it had paid to the contractor 80 per cent. of the whole amount of the contract price, before the whole contract work had been finished, it would clearly have released the surety.

[2] The contract made the superintendent the umpire to decide on the amount of work done, and both the contractor and the defendant are bound by his decision in the absence of fraud or palpable mistake, neither of which are charged.

[3] According to the unchallenged testimony of the superintendent, the amount paid to the contractor prior to the making of the supplemental contract represented 80 per cent. of the work done up to that time, and the sums paid for work and materials after that time

represented, as nearly as might be, 80 per cent. of the work done while that contract was operative. The sum of these payments was $7,666.75, and the plaintiffs were obliged to pay out afterwards ·to complete the work $6,367.35, making its total actual payments $14,034.10 for a work which defendant had undertaken that the contractor would do for $11,000. Upon the undisputed evidence in the case, therefore, the plaintiff was entitled to the direction of a verdict in the sum of $3,000, the penalty named in the undertaking. The jury, therefore, arrived at a correct result, and any error of the court in its charge became unimportant.

[4] The defendant makes a somewhat half-hearted objection to the act of plaintiff in paying for a lot of tarvia which the contractor had ordered, and left upon the ground when he abandoned the work. The objection is without substance. It is not claimed that too high a price was paid; and, if plaintiff had not taken over this tarvia and used it in completing the work, it would have been obliged to buy an equal amount elsewhere.

[5] That the superintendent made no certificate of the amount of work done after the making of the supplementary contract is unimportant. The only purpose of such certificate was to fix the amount to be paid the contractor, and as the whole 80 per cent. payable was expended for labor and materials there was nothing to be paid the contractor, and no occasion for making certificates. Smith v. Molleson, 148 N. Y. 248, 42 N. E. 669; St. John's College v. Ætna Indemnity Co., 201 N. Y. 341, 94 N. E. 994.

The judgment and order must be affirmed, with costs. All concur.