BRITISH AMERICAN TOBACCO COMPANY, LTD., Respondent, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant.

First Department, April 5, 1917.

Building contract — provision for monthly payment of certain percentage construed — guaranty and suretyship — liability of surety on bond for faithful performance of building contract — effect of overpayments by owner upon liability of surety — failure to notify surety of overpayments.

Under a building contract providing that the owner shall pay to the contractor " Eighty-five per centum of the amount which shall be due on the first of each and every month from and after the date hereof for work done and materials furnished under this contract, as per bill to be rendered to the owner by the contractor, and upon the certificates of the architects of the accuracy of the bill rendered by the contractor," and that the balance is to be paid when the work is finished and accepted by the owner upon the certificate of the architects, the owner should pay to the contractor the eighty-five per cent of the actual material furnished and work done irrespective of the fact that such payment may be making a greater payment upon the contract than represented the proportionate fulfillment of the contract.

In an action by the owner against the surety upon its bond to secure the faithful execution of such contract, the defendant, in order to claim overpayment by duplication of items, must allege that said items were paid knowingly, collusively or in bad faith, thus putting the owner upon notice of the necessity of proving its good faith.

Payment by the contractor for securing a bond for the faithful performance of the work cannot be included in the monthly payments of eighty-

five per cent, nor can an addition of ten per cent upon the actual cost of materials furnished and work done be included in such payments under a provision of the contract that where extra work is done the charge shall be the actual cost of materials furnished and work done and "ten per cent for contractor's profit."

Overpayments by the owner of the expense of the contractor's bond and of the ten per cent for contractor's profit made under a mistaken interpretation of the contractor's rights as to the basis upon which the monthly payments should be estimated, fifteen per cent of the contract price being at all times retained, did not release the surety from its obligation upon the bond, there being no allegation that said overpayments were made through collusion or in bad faith.

Nor was the surety released from liability by the failure to notify it of a possible breach of the contract by the contractor at the time when it was not in default.

The liability of the surety has not been affected by the fact that the knowledge of the payments were kept from it at the request of the contractor, because in so far as they were invalid, it is now given credit therefor.

APPEAL by the defendant, United States Fidelity and Guaranty Company, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of June, 1916, upon a decision of the court after a trial before the court without a jury.

*William F. Kimber* [*Leonidas Dennis* with him on the brief], for the appellant.

*Outerbridge Horsey,* for the respondent.

SMITH, J.:

The action is brought by plaintiff against the defendant upon its bond to secure the faithful execution of a contract entered into between the plaintiff and one John W. Davis for the construction of a certain building at Petersburg, Va. The complaint alleges that Davis proceeded to construct said building, and made default therein; that the defendant surety was notified of said default, and neglected to proceed with the construction; that the plaintiff thereupon was required to proceed with the construction at a cost to the plaintiff in addition to what had been paid to the contractor of $14,809.43 in

excess of the contract price, and it is for this sum that judgment has been demanded. The defendant makes several defenses, among them that the contractor was paid by the plaintiff in excess of the sums due to him under the contract as the work progressed. This defense raises the only questions which we are called upon to decide.

The clause of the contract which requires to be construed is the clause relating to payment. The contract binds the plaintiff to pay to the contractor $93,300 in the following manner: "Eighty-five per centum of the amount which shall be due on the first of each and every month from and after the date hereof for work done and materials furnished under this contract, as per bill to be rendered to the owner by the contractor, and upon the certificates of the architects of the accuracy of the bill rendered by the contractor. The balance shall be paid when the work is finished and accepted by the owner upon the certificate of the architects * * *." On December 1, 1913, the contractor presented an account which contained items of materials furnished and work done and claimed a balance thereon of $12,432.18. Up to this time there had been paid upon the contract $62,897.45. The attention of the plaintiff was called to the fact that the building was not more than seventy-two per cent finished, and the architects' representative upon the job refused, therefore, to certify the bill on the ground that to pay the bill would pay the contractor a greater proportionate amount of the contract price than would represent the proportionate amount of the contract work finished. The first question, therefore, that arises is as to the construction of this clause of the contract. Upon that construction I think this court is foreclosed by the case of *Hastings Land Imp. Co.* v. *Empire State Surety Co.* (156 App. Div. 258). In that case it was held that under a contract substantially similar to that in this case the requirement was that the owner should pay to the contractor the eighty per cent of the actual material furnished and work done irrespective of the fact that such payment might be making a greater payment upon the contract than represented the proportionate fulfillment of the contract. The case of *Hawkins* v. *Burrell* (69 App. Div. 464) holds a contrary rule, and that case has been followed by the case of *O'Neill* v. *Title*

*Guaranty & Trust Co.* (191 Fed. Rep. 570). The *Hastings* case, however, was affirmed without opinion in the Court of Appeals. (215 N. Y. 653.) The architects finally approved the bill, which was paid. Thereafter a balance of $3,958.89 was paid upon January 10, 1914, making in all $79,288.52 paid to the contractor upon the monthly statements rendered pursuant to the clause of the contract read.

The defendant also contends that in the payment of $79,288.52 there was overpayment in three particulars, *first*, in that certain items were duplicated in the contractor's bills as presented; *second*, that the bills paid included an item of $466.50, which was paid for this bond, and, *third*, that in the bills there was included the sum of $7,208.04, representing ten per cent commission upon the cost of material furnished and work done.

As to the first claim of overpayment, to wit, in the matter of duplication of items, we are of opinion that the defendant is not in a position to question the same, by reason of its failure to allege that the duplicated items were paid by the defendant knowingly, collusively or in bad faith. The contract provides that the owner shall pay upon the bill of the contractor certified by the architect. The owner had the clear right, therefore, to pay the bills so certified for material furnished and work done unless payment were made with knowledge of the fact that the contractor was receiving overpayment, and the question can only be raised by a specific charge to that effect in the answer, thus putting the owner upon notice of the necessity of proving its good faith.

The defendant's challenge as to the second and third items of overpayment is, we think, well made. The language of the contract unmistakably indicates that each month there shall be paid to the contractor eighty-five per cent of the cost of materials that have gone into the building or have been furnished for that purpose, and of the actual work done in the performance of the contract. It would seem clear that the moneys paid for securing a bond for the faithful performance of the work cannot be deemed either a payment for materials furnished or for work done upon the building. While it was a necessary disbursement of the contractor, he is presumed to

look for his compensation to the final profit which he shall make as represented by the final payment upon the contract, and not to these monthly payments, which are limited to payments for materials furnished and work done. Nor can we discover any logical reason in including in these monthly statements an addition of ten per cent upon the actual cost of materials furnished and work done or upon the eighty-five per cent required to be paid therefor. An item of $1,700 is included in the bill for superintendence, and if this item of $7,208.04 were intended as a payment for the services of the contractor himself, it would seem to be an unauthorized payment under the contract. But it cannot be sustained even upon that theory. The estimating of ten per cent upon the cost of material furnished and work done is purely arbitrary. The only basis for such estimate is the fact that in the contract it is provided that where extra work is done the charge shall be the actual cost of material furnished and work done and "for contractor's profit * * * 10 per cent." The stipulation for monthly payments as stipulated in the contract does not authorize any payment for contractor's profit, and if it did there is no way of estimating what was the contractor's profit upon the main contract, which was for a gross sum; it might have been five per cent or twenty-five per cent, so that this monthly payment of ten per cent in addition to the eighty-five per cent for material furnished and work done was not justified by any provision of the contract.

It follows that the credit which the Special Term has given to the contractor as payments upon the contract of $466.50 for the bond and $7,208.04 as commission, were improperly made, and upon the reference stipulated for by the parties and directed by the judgment, the plaintiff cannot have credit therefor, and that the judgment must be modified accordingly.

It is insisted by the defendant, however, that these overpayments entirely released it from its obligation upon the bond. With this contention we are not in accord. The terms of the contract were not changed and there is no allegation that the overpayments were made through collusion or in bad faith. They appear to have been made under a mistaken interpretation of the contractor's rights as to the basis upon which the

monthly payments of eighty-five per cent should be estimated. At no time was more than eighty-five per cent of the whole contract price paid to the contractor. Fifteen per cent of the contract price was in fact always retained. If the owner to relieve the contractor's distress had loaned to him at any time a sum of money it would be hypercritical to hold that he had thereby lessened the incentive of the contractor to finish his contract, and thereby release the surety. These overpayments innocently made by the owner can hardly be deemed to be more prejudicial to the surety's rights. No other rule is found in *St. John's College* v. *Ætna Indemnity Co.*, either in this department or in the Court of Appeals. (135 App. Div. 482; 201 N. Y. 335.) It would, in our judgment, be extending the rule to an unreasonable limit to hold the surety entirely released by an overpayment made to a contractor upon the monthly estimates through a mistaken view of the contractor's right, where the fifteen per cent of the contract price stipulated to be retained has been religiously withheld from the contractor. We are referred to no case in this State in which such a rule of law has been held, and are of the opinion that the surety is not entitled to such a holding, except upon some positive provision of the contract forbidding an overpayment of the monthly estimate upon any ground whatsoever. In *Smith* v. *Molleson* (148 N. Y. 241) there was a provision for payment in installments " not to exceed " a certain per cent.

Nor can we agree with the defendant's contention that the contract was violated by the failure to notify it of a possible breach of the contract by the contractor in December. The contractor was not in default at that time, and until such default there was no occasion for the plaintiff's giving any notice whatever to the surety. It is further claimed that when these payments were made in December and January, at the request of the contractor, the plaintiff kept such knowledge from the surety. The surety has by this concealment been in no way harmed. If the payments were valid payments when made there was no occasion for giving the surety notice. In so far as they were invalid payments the surety is now given credit for them with the same effect as though notice had been given thereof.

The judgment should, therefore, be modified in accordance with this opinion, and as modified affirmed.

CLARKE, P. J., LAUGHLIN, SCOTT and DAVIS, JJ., concurred.

Judgment modified as directed in opinion, and as modified affirmed.   Order to be settled on notice.