American Rattan and Reed Manufacturing Company, Inc., Respondent, *v.* Frederick H. Cone, Appellant.

Second Department, November 25, 1921.

Guaranty — contract of guaranty strictly construed in favor of guarantor — guarantor not liable on guaranty of arbitration award made under contract of sale where award made for defects in goods delivered under two contracts without separate award under guaranteed contract — substantial performance of arbitration agreement.

Where the meaning of the language used in a contract of guaranty is ascertained the surety or guarantor is entitled to the application of the strict rule of construction and cannot be held beyond the precise term of his contract.

One who guarantees any arbitration award that may be made under one of three similar contracts for the sale of rattan, cannot be held liable for an award made by arbitrators based on defects in quality of the rattan shipped, where it appears that rattan to cover the contract guaranteed and another contract was shipped together so that the particular amount assignable·to each contract could not be determined and the award of the arbitrators was based on the defects in quality of the entire commingled mass, and there was no separate award made under the contract for which the guaranty was given.

Where both the arbitrators agreed that an allowance should be made to the plaintiff and the only dispute was as to the assessment, and it appears that the umpire, a man of thirty-five years' experience, went to the pier and inspected and examined the bundles of rattan before making his decision, there was a substantial performance of the arbitration agreement.

Submission of a controversy upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

*Arthur H. Haaren,* for the plaintiff.

*Frederic E. Mygatt,* for the defendant.

Kelly, J.:

The plaintiff asks judgment against the defendant for $3,177.18, with interest from October 18, 1916, and costs, and defendant asks that the action be dismissed with costs. The plaintiff's claim is based upon a written guaranty signed by the defendant. The facts are as follows: In June and July, 1916, the plaintiff purchased quantities of rattan from a copartnership located at Macassar, in the island of

Celebes, Dutch East Indies, in the South Pacific, known as Handel-Maatschappij Moraux & Co. The defendant was the agent of the Macassar firm in the city of New York. The purchases were made by three separate written contracts in the form of letters addressed to the plaintiff and signed by the defendant, confirming the sale for account of the Macassar firm, and each letter contains an acceptance thereof by the plaintiff signed by its president. The first, "Contract No. 36198," was dated June 8, 1916, and the quantity therein sold was "about 100 tons (of 2240 pounds)," to be shipped "from Makassar, via Singapore, during the months of June, July, 1916, at sellers' option;" the price, "£43/15 per ton (of 2240 pounds), cost and freight New York;" the second, "Contract No. E10," was dated June 12, 1916, for "about 75 tons (of 2240 pounds)," to be shipped "from Makassar, via Singapore, during the months of June/July/August, 1916, at sellers' option," at the "Price £43/15- ton (of 2240 pounds) cost and freight New York;" and the third, "Contract No. E11," was dated July 15, 1916, for "About 100 tons (of 2240 pounds)," "Shipment prompt from Makassar, via Singapore," at the price of "£41/- per ton (of 2240 pounds), cost and freight New York." The method of payment was the same in each contract, viz.: "Payment by four (4) months sight draft, in pounds sterling, under London Bankers Credit. Duty, if any, for buyers account." Insurance to be covered by buyers, including war risk. Each of the three contracts also contained the following clauses.

"*Terms:* In the event of any portion of the above goods not being shipped in terms hereof, the buyer may claim as to such portion and shall accept the portion shipped in accordance with contract. Any defect in quality or quantity of goods shall not invalidate contract, and failing an amicable arrangement, any dispute as to quality or quantity of goods or damage suffered, shall be settled by arbitration at New York, each side to appoint an arbitrator with authority to appoint an Umpire, and their award to be final and binding on both parties, who are to equally bear the expense of arbitration. Buyers shall accept goods with such allowance or award as may be made. Each shipment to be considered a separate contract. This contract is contingent upon strikes, floods,

storms, fires, pestilence, riots, war, rebellion, force majeure, and upon all casualties, delays and deviations beyond our control.

" Any claims must be made within ten days from landing of goods on Dock, ten per cent. of original unopened packages must be available in the event of dispute regarding quality, etc. In default of the production of such per centum of original packages no claim shall be made or allowed."

The plaintiff's claim in this controversy is based upon a letter dated June 8, 1916, signed by the defendant, as follows:

" FRED H. CONE, 176 Front St., N. Y.

" *June* 8, 1916.

" AMERICAN RATTAN & REED MFG. Co.,

" Cor. Norman & Kingsland Ave's.,

" Brooklyn, N. Y.

" GENTLEMEN.— Referring to contract No. 36198 I beg to advise that we guarantee the carrying out of any arbitration award that may be made under this contract.

" Very truly yours,

" FHC /RB                     FRED H. CONE."

It will be noted that this guaranty refers only to contract No. 36198, and bears date prior to the date of the subsequent contracts.

On or about June 21, 1916, in pursuance of contracts 36198 and E10, the Macassar firm delivered to the plaintiff documents covering 181 tons of rattan, without specification as to which of said 181 tons was delivered pursuant to contract No. 36198, and which under contract E10. The first contract covered " about 100 tons," the second " about 75 tons." On or about July 17, 1916, documents were delivered to plaintiff covering " about 98 tons " of the material in pursuance of the third contract, E11, which was for " about 100 tons." Delivery of the documents in each case was made prior to the arrival of the merchandise in New York, and payment was made by plaintiff on receipt of the documents.

Thereafter the steamship *Muncaster Castle* arrived at New York and discharged 181 tons of rattan in due course to apply on contracts No. 36198 and No. E10, but no appropriation of rattans to either contract was made by the vendor and shipper, the Macassar firm, or by the plaintiff, and said

181 tons were regarded as applying on the two contracts without specification. And later on the arrival of the steamship *St. Bede,* 98 tons of rattan were discharged to apply on contract No. E11.

The plaintiff upon examining some of the rattan discharged claimed in a letter to defendant dated October 3, 1916, that it was defective in quality and that it did not come up to sample, that there were " considerable worm eaten sticks," and plaintiff, anticipating that upon opening the additional bundles additional defects would be discovered, demanded an arbitration of the dispute as provided in each of the three contracts.

The defendant answered by a letter dated October 4, 1916, in which he acknowledged the demand for arbitration and appointed one Warnecke to act for the vendor, suggesting that plaintiff remove the rattan to plaintiff's warehouse to facilitate examination. On October 9, 1916, the plaintiff appointed Mr. Miltenberg to represent it on the arbitration.

The arbitrators met, and it appears that they agreed that an allowance should be made to plaintiff; Mr. Warnecke for the vendors fixing ten per cent as a proper allowance, while Mr. Miltenberg for the plaintiff purchaser fixed the allowance at fifteen per cent. Being unable to agree as to the amount to be allowed, the arbitrators, pursuant to the three contracts, appointed Mr. William E. Murphy as the umpire " to decide between the 10% allowance conceded by Mr. Warnecke or the 15% claimed by Mr. Miltenberg."

Thereafter Mr. Murphy went to the pier where the rattans were, and inspected them by examining accessible bundles, and on October seventeenth he decided that an allowance of fifteen per cent should be made to the plaintiff.

It is agreed that this allowance of fifteen per cent, if applied to the purchase price of the rattans covered by the contract No. 36198, would amount to £656, 5s., or $3,117.18. On October 18, 1916, the plaintiff demanded payment of this sum, but neither the defendant nor the defendant's principal, the Macassar firm, has made payment.

The question presented on the submission of the controversy is whether or not, according to the terms of the contracts, and of the letter of guaranty given by the defendant to the plaintiff, the correspondence and negotiations between

the parties and the method of arbitration pursued, the defendant is liable to the plaintiff for the amount of the refund decided upon by the umpire, or in any amount.

The defendant can only be held on his letter of June 8, 1916. His other dealings with the plaintiff were simply as agent for the Macassar firm. The plaintiff claims defendant's letter imposes a direct and primary obligation upon him. (*Wood* v. *Tunnicliff*, 74 N. Y. 38; *Clark* v. *Howard*, 150 id. 232, 239.) I am disposed to agree with this contention, but the trouble with the plaintiff's claim against defendant arises from the transaction prior to the arbitration. Concededly the defendant did not guarantee three contracts. His liability was expressly limited to one contract only, No. 36198. He guaranteed the carrying out of any arbitration award made under that contract. He never agreed to incur liability for defects in the rattan purchased and delivered under contracts E10 and E11, made after the date of his letter. " The fact that the defendant was a guarantor does not change the rule of interpretation that the intention of the parties is to be ascertained and enforced if it be lawful and adequately expressed in the instrument. Where the question is as to the meaning of the language of the contract, there is no difference between the contract of a guarantor or surety and any other contracting party. The contract of the former, however, when determined, is not to be extended by implication or construction. (*Gates* v. *McKee*, 13 N. Y. 232; *Belloni* v. *Freeborn*, 63 N. Y. 383.) The conditions under which the contract was executed may be reproduced, in so far as the findings of the trial court enable, in connection with the language used and the subject-matter of the negotiations of the parties. (*Bank of Montreal* v. *Recknagel*, 109 N. Y. 482.)" (*Catskill Nat. Bank* v. *Dumary*, 206 N. Y. 550, 555.) The weight of authority seems to favor that construction which shall accord with the apparent intention of the parties in conformity with the rule governing the construction of contracts generally, but when the meaning of the language used is ascertained the surety or guarantor is entitled to the application of the strict rule of construction and cannot be held beyond the precise term of his contract. (*Smith* v. *Molleson*, 148 N. Y. 241; *Evansville Nat. Bank* v. *Kaufmann*, 93 id. 273.)

Having these principles in mind and considering the plain, unambiguous language of the defendant's letter, I think he is justified in denying liability on the award of the arbitrators and umpire of an allowance, not on contract No. 36198 which he guaranteed, but upon contracts No. 36198 and No. E10. He guaranteed a contract No. 36198 for the purchase of 100 tons of rattan of a given quality. If there was a dispute between vendor and purchaser as to the quantity or quality of the shipment to be made during the months of June and July, 1916, it was to be submitted to the arbitrator and the defendant guaranteed the carrying out of any arbitration award " that may be made under this contract."

When the vendor, instead of shipping the 100 tons of rattan so contracted for, mingled it with 81 tons of rattan called for by a different contract, E10, to be shipped at a different time, viz., June, July and August, 1916, and when the purchaser received the two consignments so intermingled, how can we determine where the defect found by the arbitrator existed. The defendant guarantor in New York city had nothing to do with the mixing or blending of the two orders into one shipment out in the island of Celebes. Nor is he, in his capacity of guarantor, liable for the act of the vendor in mingling the two orders, if in fact such mingling was done by the vendors. Of the aggregate 181 tons the arbitrator found rattan which did not come up to sample or which was wormeaten, justifying a fifteen per cent abatement in the price. The umpire based his allowance of fifteen per cent upon the three cargoes, aggregating 279 tons. It is not suggested that out of the 279 tons there were not 100 tons which complied with the contract. *Non constat* the 100 tons shipped under contract No. 36198 were perfect. There was no separate arbitration award made under contract No. 36198, and that was what the defendant guaranteed. The Court of Appeals says of the contract of a guarantor, " The defendant's obligation is *strictissimi juris*, and he is discharged by any alteration of the contract, to which his guaranty applied, whether material or not, and the courts will not inquire whether it is or is not to his injury." (*Page* v. *Krekey*, 137 N. Y. 307, 314.) But it seems to me that in this case it is not necessary to resort to the rule of *strictissimi juris*, because it

is obvious that the award made is not the award mentioned in the defendant's guaranty. And if we adopt the suggestion of the learned counsel for the plaintiff and are " keen to ascertain the intent of the parties and try to give it effect," the result is the same — the plaintiff fails to show defects or an award for defects within the plain language of defendant's agreement. I conclude, therefore, that the plaintiff has not made out a case. The defendant urges another defense to plaintiff's claim, contending that the umpire should have passed upon the entire subject-matter of the dispute instead of limiting his action to the question whether the allowance should be ten per cent or fifteen per cent. Both of the arbitrators agreed that an allowance should be made to the plaintiff. It appears that the umpire, a man of thirty-five years' experience, went to the pier and inspected and examined the bundles of rattan before making his decision. I think there was a substantial performance of the arbitration agreement within this particular.

BLACKMAR, P. J., MILLS, RICH and PUTNAM, JJ., concur.

Judgment directed for the defendant, dismissing the complaint upon the merits, with costs in accordance with the terms of the submission.