In the Matter of the Estate of PEDRO BEA Y URQUIJO, Deceased.

Surrogate's Court, New York County, October 27, 1924.

**Surrogate's Court — discovery — proceeding by representative of estate to procure delivery of certain securities held by banking firm under claim of lien pursuant to contract of guaranty made by decedent, member of Cuban sugar concern — evidence of agreement, contained in letters between parties, indicates decedent pledged securities for "next campaign," and not unconditionally and without limit of time — intention of parties controlling as to meaning of language of contract — contract did not constitute continuing pledge or guaranty — extension of credit did not alter contract of guaranty — petitioner entitled to delivery of securities.**

The rule as to the interpretation of a contract that the intention of the parties is to be ascertained and enforced if it be lawful and adequately expressed in the instrument is not altered by the fact that the contract is one of a guarantor or surety.

Accordingly, in a discovery proceeding to procure the delivery of certain securities, held by a banking firm under a claim of a lien under a contract of

guaranty made by the decedent, a member of a Cuban sugar concern, the petitioner, as representative of the decedent's estate, is entitled to the delivery of all the securities to him, where it appears that the evidence of the agreement, contained in letters passing between the parties, indicates that the decedent pledged the securities for the " next campaign " and not unconditionally and without limit of time, and where there is nothing to show that the decedent contemplated a further extension of the pledge beyond the time indicated in the agreement.

The accepted usage in the trade of the words " next campaign " is the period from approximately January to the end of May in each year.

The contract cannot be considered as creating a continuing pledge or guaranty. The fact that the banking firm extended credit at various times during the succeeding years did not alter the express limitation of the original contract.

DISCOVERY proceeding to procure delivery of certain securities.

*Glenn & Ganter* [*Garrard Glenn* and *William B. Walsh* of counsel], for the petitioner.

*Wickes & Neilson* [*Herman E. Riddell* of counsel], for the respondents.

FOLEY, S.:

In this discovery proceeding the representative of the estate seeks to procure the delivery of certain securities of the value of $200,000. The respondents, a firm of bankers, claim to be entitled to a lien upon the securities under a contract of guaranty made by the decedent. The evidence of the agreement is contained in certain letters. One, dated August 23, 1913, from the respondents, Lawrence Turnure & Co., to Sobrinos de Bea & Co., a Cuban sugar concern, of which the decedent was a special partner, reads: " Our Mr. Turnure has received a letter from your Mr. Urquiza with regard to Credit for the next campaign and we have the pleasure to confirm by the present the reply of our Mr. Turnure as follows: We are pleased in confirming to you the renewal of the Credit in blank for the sum of $100,000 subject to 6% interest a year and to be covered by the proceeds of the sugars which are to be sent to us on consignment by your esteemed firm. ＊ ＊ ＊ "

Another is dated December 24, 1913, from the respondents to the decedent and is as follows: " We refer again to your favor of the 4th inst. and we enclose the list of your securities in our custody, as you had requested.

" In accordance with what Mr. Urquijo wrote us on Oct. 16th of this year, we understand that these securities are in our possession as guarantee for the advances that we may make to your firm Messrs. Sobrinos de Bea & Co. and for good order's sake, we will be obliged if you will so confirm it to us."

A letter written about December 24, 1913, from the decedent to the respondents reads as follows: " Your letter of the 24th. ulto. was duly received and I have had to delay its reply on account of

being in ill health.   I thank you for the list of my securities which you sent me.   With regard to the other point to which you refer in your said letter, I confirm expressly the statement made to you by Mr. Pedro Bea y Urquijo regarding the fact that my securities guaranteed the loan which you made to Messrs. Sobrinos de Bea y Cia. of $100,000 under the terms agreed upon with that partnership.

" Unconditionally and without limit of time, it is impossible and you will so understand it, that I should leave encumbered the securities which you refer to because this would be equivalent to my not being able to dispose of them at any moment in whole or in part, if I should so consider it convenient in the development of my private business.   My purpose is now to keep those securities as they are and acquire more, as I intend to do so shortly, but even while all the probabilities are that I will carry this through during some time, at any moment I might change my mind if I want to realize on them to raise cash or if I consider that I should exchange them for other securities in the United States or somewhere else. You will understand, you who are used to these operations, and will not find this strange."

No correspondence whatsoever was had between any of the parties with respect to the pledge of the securities subsequent to the letter of the decedent set forth above.   In May, 1921, the decedent was adjudged insane and about two years later he died. In 1923 the respondents recovered a judgment against the Sobrinos concern in an action for the breach of a contract dated March 20, 1920.   Now, after the death of the decedent they seek to apply the proceeds of the securities under their lien to the amount of their judgment.   They contend that a continuing pledge or guaranty was created.   This contention cannot be sustained.   From a careful reading of the letters forming the contract it is plain that the decedent's guaranty covered the extension of credit to Sobrinos de Bea & Co. in the sum of $100,000 only during the period of the next sugar campaign.   The uncontroverted testimony of the witness on the hearing before me established that the accepted usage in the trade of the words " next campaign " was the period from approximately January to the end of May in each year when the annual crop of sugar is produced and sold, and the term did not extend beyond the beginning of the production for the succeeding year.   Nothing contained in the contract, therefore, contemplated a further extension of the pledge beyond the campaign for the year 1914.   On the contrary, the decedent clearly indicated in his letter his desire not to leave his securities incumbered " unconditionally and without limit of time."   As stated by the Court of Appeals in *Catskill Nat. Bank v. Dumary* (206 N. Y. 550, 555): " The fact that the defendant was a guarantor does not change the

rule of interpretation that the intention of the parties is to be ascertained and enforced if it be lawful and adequately expressed in the instrument. Where the question is as to the meaning of the language of the contract, there is no difference between the contract of a guarantor or surety and any other contracting party. The contract of the former, however, when determined, is not to be extended by implication or construction." (See, also, *American Rattan & Reed Mfg. Co.* v. *Cone*, 198 App. Div. 843, 847; *Smith* v. *Molleson*, 148 N. Y. 241; *Evansville Nat. Bank* v. *Kaufmann*, 93 id. 273; *Bank of Italy* v. *Merchants Nat. Bank*, 236 id. 106.)

The fact that the respondents extended credit various times during the succeeding years to an amount exceeding $100,000 did not alter the express limitation of the original contract. These later extensions of credit were at the risk of the bankers and the inference from the transactions between the parties indicates reliance upon the general financial responsibility of Bea & Company rather than any dependency upon the special pledge of the securities of the decedent.

The petitioner is, therefore, entitled to the delivery of all the securities to him as the representative of the estate of the decedent.

Submit decree accordingly.