(121 App. Div. 589.)

CITY OF MIDDLETOWN v. ÆTNA INDEMNITY CO. OF HARTFORD, CONN., et al.

(Supreme Court, Appellate Division, Second Department. October 23, 1907.)

PRINCIPAL AND SURETY—DISCHARGE OF SURETY—CHANGE OF CONTRACT.

    A map used to acquire a right of way of given width for a pipe line showed only the wavy center line thereof, and not the side lines, which were to be determined by measurements from the center line. The same map was used in the specifications and contract for the pipe line, which stated that the general width of the right of way was 66 feet. The contract did not state that the pipe line was to follow the center line; but it provided that the work should be done under detail plans to be furnished

by the engineer as it progressed, and that the trenches should be straight and curved as directed. With the assent of the contractor's surety a change was made, substituting a tunnel of lower level for a deep trench. In excavating the tunnel the contractors followed a straight line from the point of beginning of the center line, instead of following the wavy center line, which the city engineer allowed; but they did not go outside the right of way. *Held*, that following the straight line, instead of the crooked one, was not such a noncompliance with, or change of, the contract as to release the contractor's surety, and especially as it decreased the trouble and expense, and was the only practical method of constructing the tunnel which had been substituted for the trench.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Surety, §§ 162, 165.]

Hooker and Rich, JJ., dissenting.

Appeal from Trial Term, Orange County.

Action by the city of Middletown against the Ætna Indemnity Company of Hartford, Conn., and others. From a judgment for defendants, plaintiff appeals. Reversed, and new trial granted.

See 100 N. Y. Supp. 1110.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Thomas Watts, for appellant.
Clarence Lexow, for respondents.

GAYNOR, J. The plaintiff in supplying itself with water made a contract for the construction of a pipe line 19,300 feet long. A section of it 2,200 feet long was to be laid in a deep tunnel instead of a deep trench, by a modification of the contract in which the surety joined. The contractors abandoned the work after doing part of it, and this action is against their surety on its bond for performance. The complaint was dismissed on the close of the plaintiff's evidence on the ground that the pleaded defence that the plaintiff and the contractor changed the contract by an agreement made between them without the consent of the surety was made out. The claim is that the tunnel through the said section of 2,200 feet was changed in the detail of doing the work from a curved line to a straight line. The contract and specifications show that the pipe line was of 20-inch pipe and was to be laid in a right of way of the general width of 66 feet acquired by the city, the plaintiff. The map used to acquire the right of way showed the centre line thereof, but not the side lines. They were determinable by measurements from the centre line, the width of the right of way being given. This same map was used in the specifications and contract to show where the pipe line was to be laid. The centre line was all that it showed, as already stated, but the specifications, which with the map were made part of the contract, stated that the general width of the right of way for the pipe line was 66 feet. The contract does not say in words that the pipe line is to follow the said centre line, but the defendant, the surety, claims that that is the contract, nevertheless, by reason of the said map being part thereof.

This may be granted and still the dismissal would be error. The evidence, including the map, shows that the right of way over the said section of 2,200 feet curved or waved to right and then to left

several times, instead of its sides being straight lines. There was no agreement made changing the contract for a tunnel; but in excavating the tunnel the contractors did not follow the curving or waving centre line of the right of way, but a straight line, from the point of beginning on the centre line, and the city's engineer in charge allowed this, and after the abandonment the city completed the work in the same way. In this way the tunnel three times deviated from the centre line and returned to and crossed it. Sometimes the deviation was very little, and once as far as 38 feet, but always keeping within the right of way, which along there was 99 feet wide. The result was that the tunnel was 16 inches shorter than if it had followed the centre line, and cost at least that much less, the contract price being $9 the running foot. The result avoided was the great difficulty, to say the least, and the extra expense, of following the centre line in excavating so small a tunnel (5 feet wide by 6 high) on a constantly curving line through rock; for the evidence is that it is impracticable to do so. And the evidence shows that there was no reason at all to follow the centre line; that it was wholly unnecessary; that it would affect the use of the tunnel in no way to make it on a straight line instead of constantly curving or waving; and moreover that with such small tunnels it was the custom to deviate to avoid difficulties and obstacles. No agreement changing the line of the tunnel having been made, the only question presented is, therefore, whether the contract was substantially carried out (if, indeed, the case has any standing, the allegation of the answer of an agreement by the parties changing the contract having failed). If it was, the plaintiff is entitled to recover and the dismissal was error. The question is the same as though the contractors had an action for the contract price, and the city denied the completion of the contract, in that the tunnel deviated from the centre line of the right of way. Such a defence could not prevail. A substantial compliance would enable the contractor to recover and it could not be said that there was not such a compliance, for the deviation would be harmless and immaterial, and made in good faith. Glacius v. Black, 50 N. Y. 145, 10 Am. Rep. 449; Nolan v. Whitney, 88 N. Y. 649; Rowe v. Gerry, 112 App. Div. 358, 98 N. Y. Supp. 380. In an action against sureties, the rule of construction of the principal contract is the ordinary rule of construction of contracts. The rule that the liability of sureties is strictissimi juris does not apply thereto, but only to the question whether another contract has been substituted, in which case the surety cannot be held, for the contract he went surety for no longer exists. Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669; Ulster Co. Savings Inst. v. Young, 161 N. Y. 23, 55 N. E. 483. The question here is whether the principal contract was performed, and it cannot be said as matter of law that it was not.

When the strict letter of the contract is examined, it will also be seen that it is not that the trench and tunnel shall strictly adhere to the centre line, for it provides that the work shall be done under detail plans to be furnished by the engineer as it progresses, and that "the trenches shall be straight and curved as directed," i. e., by him; and the substitution of the tunnel for the trench on the section in question left this still in force.

It is argued that the profile which formed part of the specifications must have had reference to a fixed surface line in showing the depth of excavations, and that that was the centre line of the right of way; but the evidence of the engineer who made it is to the contrary, viz., that after the custom in the making of such maps, the surface line shows the general or average surface elevation at the place in the right of way, instead of along a fixed line.

There is another reason why the dismissal was erroneous, even assuming that the original contract required the trench to follow the centre line.   As has already been mentioned, the original contract requiring the pipe to be laid in a trench was by agreement of the parties and the surety changed by substituting a tunnel along the section in question.   The change was a concession to the contractor and surety, it being for their benefit.   The trench for most of the distance was to be from 30 to 35 feet deep, all through rock excepting the top 13 feet, and the object of the change was to make the work less expensive. The agreement of change does not say the tunnel shall follow the centre line; it simply substitutes a tunnel for a trench, except that the tunnel is to be 9 feet lower than the trench.   It would be easy enough to follow the centre line on the surface in digging the trench, but to follow that constantly curving line in building such a small tunnel through rock 39 to 44 feet below the surface would be a very different matter. The evidence is that it would be impracticable.   Now the change from trench to tunnel carried with it all things necessary to make such change practicable.   The parties did not mean an impracticable change. The contrary must be presumed.   If it were possible at all to approximately excavate the tunnel through rock on the constant curve of the centre line, instead of on a straight line, or straight lines, the great nicety and difficulty of it would add greatly to the expense, whereas the object of the change was to lessen the expense.   There was no reason to do so, and it would have been folly and detrimental to the contractor and the surety to do so.

When this case was here before (97 App. Div. 344, 90 N. Y. Supp. 16), the record made it appear to us that there was a substantial departure from the contract in doing the work, to the injury of and which therefore released the surety, i. e., a "change of the route from that around the hill to the straightened line through it," as our opinion says; and we properly concluded that such change "released the surety in the absence of its assent."   We now know from the present record that there was no such agreement or change, but that the contract was substantially performed.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide event.  All concur, except HOOKER and RICH, JJ., who dissent.