HARRY ZALKIN, Appellant, *v.* SUNSHINE SALES CORPORATION and Others, Defendants, Impleaded with MORRIS KRIM and Another, Respondents.

HARRY ZALKIN, Appellant, *v.* JARVIS LANE GARDENS, INC., and Others, Defendants, Impleaded with MORRIS KRIM and Another, Respondents.

HARRY ZALKIN, Appellant, *v.* LEA LIPPMANN, etc., and Others, Defendants, Impleaded with MORRIS KRIM and Another, Respondents.

HARRY ZALKIN, Appellant, *v.* JOSEPH FYBUSH and Others, Defendants, Impleaded with MORRIS KRIM and Another, Respondents.

HARRY ZALKIN, Appellant, *v.* HENRY W. LANDOLT and Others, Defendants, Impleaded with MORRIS KRIM and Another, Respondents.*

Second Department, November 2, 1928.

* Revg. 133 Misc. 404.

*Charles J. McDermott* [*Lewis H. Saper* with him on the brief], for the appellant.

*Harold Cohn,* for the respondent Morris Krim.

*Edward A. Sargoy,* for the respondent Max Krimsky.

KAPPER, J.   Five separate actions to foreclose five mortgages upon property in Queens county have been brought by the plaintiff. The mortgages were made on May 7, 1926, by Jarvis Lane Gardens, Inc., to the plaintiff, each to secure the sum of $6,500, with interest at six per cent per annum payable semi-annually on the seventh day of November following the making of the mortgages and every six months thereafter.   The defendants Morris Krim and Max Krimsky are named as defendants in all five actions, but other defendants named in the several suits are not the same defendants in all, this probably being due to the transfer of the mortgaged

premises by the mortgagor to various owners. The parties are agreed that all five complaints and answers, so far as interposed, are the same in form in all the cases; and that the orders appealed from are of like purport. The appeal is, therefore, here in one record.

The complaints alleged that the mortgages contain the following covenants:

" That the mortgagor will pay the indebtedness as hereinbefore provided.

" That the whole of said principal sum shall become due after default in the payment of any installment of principal or of interest for thirty days, or after default in the payment of any tax, water rate or assignment [*sic:* assessment] for thirty days after notice and demand."

It is also alleged that the mortgagor " and the other defendants herein " have failed to comply with the terms and conditions of said bonds and mortgages by the non-payment of interest due on May 7, 1928; that more than thirty days have elapsed since the same became due; that the owners of the property have failed to pay taxes for the first half of the year 1928 which became due and payable on May 1, 1928; that payment of such taxes has been demanded and that defendants have not made such payments, and that more than thirty days have elapsed since the giving of notice and demand. Further, that " plaintiff has elected and does hereby elect to declare the whole of the said principal amount as secured by said bond and mortgage to be due and owing." The complaints then allege the giving of a collateral bond by the defendants Krim and Krimsky, and two other individuals named, " in order to induce the plaintiff herein to accept the aforesaid bond and mortgage, together with nine certain other bonds and mortgages, from the said Jarvis Lane Gardens, Inc., and to pay the said Jarvis Lane Gardens, Inc., the considerations in said bonds and mortgages expressed."

These allegations are not the subject of denial.

The chief controversy is due to the insistence of the defendants Krim and Krimsky that the so-called collateral bond provides for the payment of the entire obligation of $65,000, or so much thereof as may be attributable to a deficiency in the debt due the mortgagee at a date not earlier than May 7, 1929, the due date of the ten separate mortgages. The guaranty or collateral bond is in language as follows:

" Know All Men by These Presents, That,

" Whereas, Jarvis Lane Gardens, Inc., a corporation organized under the Laws of the State of New York, did execute its ten (10)

certain bonds to Harry Zalkin, of Woodmere, Town of Hempstead, Nassau County, New York, each bearing date the ———— day of May, 1926, and each to secure the principal sum of sixty-five hundred dollars ($6500.00) with interest and as collateral security thereto, the said Jarvis Lane Gardens, Inc., did execute its ten (10) certain mortgages to the said Harry Zalkin which said mortgages are to be immediately recorded in the office of the Clerk of Queens County, New York; and

" WHEREAS, as such additional security for said sums of money the undersigned have agreed to execute a bond collateral to the bonds above mentioned.

" Now, THEREFORE, in consideration of the premises and of the sum of one dollar ($1.00) lawful money of the United States to us and each of us in hand duly paid by the said Harry Zalkin at or before the ensealing and delivery of these presents, receipt whereof is hereby acknowledged, we and each of us jointly and severally are held and firmly bound unto the said Harry Zalkin in the sum of sixty-five thousand dollars ($65,000) lawful money of the United States to be paid to the said Harry Zalkin, his personal representatives or assigns, for which payment well and truly to be paid we bind ourselves, our heirs, executors and administrators firmly by these presents.

" Sealed with our seal this 7th day of May, 1926.

" The condition of this obligation is such that if the said Jarvis Lane Gardens, Inc., its successors or assigns shall well and truly pay or cause to be paid to the said Harry Zalkin, his personal representatives or assigns the just and lawful sum of sixty-five thousand dollars ($65,000) on the 7th day of May, 1929, with interest thereon at and after the rate of six per cent (6%) per annum to be paid on the 7th day of November next ensuing the date hereof and semi-annually thereafter until the aforesaid principal sum of sixty-five thousand dollars ($65,000) shall be paid (this instrument being collateral to the said bonds and mortgages hereinbefore recited) then the above obligation to be void, otherwise to remain in full force and virtue.

" It is further understood and agreed by and between the parties hereto that the terms and provisions of said bonds and mortgages shall remain unaffected by this obligation and that this obligation shall in no wise be impaired by reason of any further obligation, stipulation or agreement between any owner or owners of said mortgaged premises (or any portion thereof) and the then owner of said bond and mortgages relating to the payment of the said sum, or by reason of any release of a portion of said mortgaged premises from the lien of said mortgages, but this obligation shall

be and remain in full force and effect and in no wise be impaired until the actual payment of said sum to said obligees or to the legal representatives, successors or assigns of said obligees.

" Signed and sealed this 7th day of May, 1926.
                    " MORRIS KRIM
                    " M. KRIMSKY
                    " JACOB EICHENBERG
                    " JOSEPH FRIEDBERG

" In the presence of
            " JOSEPH FRIED."

This bond was acknowledged on its date of execution, May 7, 1926, and is cotemporaneous with the giving of the ten mortgages, all dated the same day.

The defendants Krim and Krimsky interposed separate answers, both in identical language; and the two separate defenses objected to by plaintiff, and which the learned Special Term declined to strike out, are, *first*, that by the terms of said guaranty bond the obligation of the defendants " does not mature, if at all, until the 7th day of May, 1929, and no cause of action has accrued against this defendant; " and *second*, that in a prior foreclosure suit on one of said $6,500 mortgages brought by the plaintiff against one Ochacher and others (including the mortgagor Jarvis Lane Gardens, Inc., and these two individual defendants), there was a judgment of foreclosure and sale against the present individual defendants requiring them to pay plaintiff in said action a deficiency amounting to $3,553, for which reason these respondents allege that plaintiff is barred from maintaining the present actions, the theory of the defense being that there was a " splitting " of a single cause of action.

In this second defense the respondents admit due service of the summons and complaint in the Ochacher action, also their appearance therein and a demand by them of service of all papers, expressly alleging that they " did not answer said complaint." This may be read into the first defense in determining its sufficiency. It is apparent, therefore, that the respondents had the opportunity to set up in the Ochacher action the same defense that they now assert, namely, that the present actions are prematurely brought on the ground that their obligation did not mature until May 7, 1929. It is not necessary to hold that their failure to litigate that question in the Ochacher case is *res adjudicata* as to this first separate defense. It does, however, forcibly express the view that they have placed their own practical construction upon the language of this guaranty bond, clearly regarding their obligation on that particular $6,500 mortgage under foreclosure as then due to the extent of any deficiency for which that judgment should

and ultimately did hold them liable. But that, in my opinion, is not the only reason for holding the present challenged first defense insufficient. There is no disputing the rule that where other instruments are " by reference made a part of the bond   *   *   * in order to determine the scope of the defendant's undertaking, the two instruments must be read together." (*Smith* v. *Molleson*, 148 N. Y. 241, 246.) It was added in that case: " It is true, as the learned counsel for the defendant contends, that the liability of a surety is *strictissimi juris*. But that does not mean that a different rule must be applied in the construction of contracts of suretyship than that which is to be applied in the construction of contracts in general. Like all other contracts the undertaking of a surety must be construed fairly and reasonably, and according to the intention of the parties. If the surety has used ambiguous language and the party secured has advanced his money on the faith of the interpretation most favorable to his rights, that will, ordinarily, prevail if the instrument is open, reasonably, to such interpretation. It means that a surety shall not be held beyond the precise stipulations of his contract. He is not liable on any implied engagement where a party contracting for his own interest might be, and he has the right to insist on the strict performance of any condition for which he has stipulated, whether others would consider it material or not. But where the question is as to the meaning of the written language in which he has contracted there is no difference, and there ought not to be any, between the contract of a surety and that of any other party. In this respect they are ordinary commercial obligations standing upon the same footing as other contracts."

Recurring to the above-quoted instrument, we find at the outset a recital of the execution of ten separate bonds and ten separate mortgages, each to secure the principal sum of $6,500. It is next recited that " as such additional security for said sums [not sum] of money the undersigned have agreed to execute a bond collateral to the bonds [not bond] above mentioned." The complaint, undenied, is that plaintiff was induced to lend to Jarvis Lane Gardens, Inc., the total sum of $65,000 in equal amounts of $6,500 each on ten separate bonds and mortgages, by virtue of the giving of this guaranty bond. The bond, moreover, declares as one of its conditions that the borrower or " its successors or assigns " shall pay the semi-annual interest when due, adding parenthetically " this instrument being collateral to the said bonds and mortgages hereinbefore recited." There is then expressed an understanding that the " terms and provisions of said bonds and mortgages " shall remain unaffected by the bond which, itself, shall

not be impaired by reason of any agreement between " any owner or owners of said mortgaged premises (or any portion thereof) and the then owner of said bond and mortgages, * * * but this obligation shall be and remain in full force and effect and in no wise be impaired until the actual payment of said sum to said obligees or to the legal representatives, successors or assigns of said obligees."

The purpose of the last referred to provisions as to the understanding of the parties manifestly was to hold the mortgagor, Jarvis Lane Gardens, Inc., upon its obligation for any possible deficiency so that any agreement between a subsequent owner of the equity and an assignee of the mortgage, such as an assumption of the mortgage, would not affect the legal liability of the first mortgagor. And significant, too, in this respect, is the language of the bond which contemplates that these mortgages might be assigned as well as the separate pieces of property conveyed. In that respect, it seems to me too clear for dispute, if the respondents had not already placed their own interpretation upon the instrument by their failure to answer in the Ochacher case, that the guaranty bond was to secure any deficiency that might arise upon the foreclosure of any of the ten mortgages. The Ochacher mortgage default was for the next payment of an installment of interest due November 7, 1927. The default in the present five mortgages was for the non-payment of the installment of interest due May 7, 1928, besides non-payment of taxes due May 1, 1928. The signatories to this guaranty bond, executed cotemporaneously with the ten bonds and mortgages, have plainly indicated the maturity of their obligation, as I read it, as soon as a default occurred upon the part of whoever happened to be the owner of the equity in payment of an installment of interest or in the payment of a tax, water rate or assessment. An independent and unrelated foreclosure suit could be begun by the mortgagee or his assignee, and for a deficiency thereon the makers of this bond would become presently liable. That seems to me to be the plain purport of this guaranty bond; otherwise, and if nothing could be collected from them despite deficiencies until May 7, 1929, the possibilities would be ten separate suits by ten different obligees on May 7, 1929, a result not reasonably to have been contemplated.

At the same term at which the present five appeals were argued, there was also argued an appeal by the present two respondents (*Matter of Zalkin*, 225 App. Div. 675). There, Zalkin foreclosed one of the ten mortgages but inadvertently omitted to make Krim and Krimsky parties defendant. There was a deficiency arising upon the sale, and leave to sue those two persons for the deficiency as a part of the mortgage debt, pursuant to section 1078 of the Civil

Practice Act, was granted by the Special Term. The position taken by Krimsky, respondent in the present five appeals, was stated by him in his opposing affidavit before us, viz., that Zalkin (petitioner) " could and should have joined these collateral obligors as parties defendant in the above-entitled action if he desired to recover any deficiency from them. This certainly is not the case of where a foreclosing mortgagee had no knowledge of collateral obligors." We have here no intimation that the debt had not matured as to that particular mortgage, which is exactly the position that was taken by the respondents in the Ochacher case. Nor does the respondent Krim in his answering affidavit on said motion make any claim that the obligation had not matured and that any such action to bring which leave was sought was premature prior to May 7, 1929.

If the foregoing views, as affecting the first defense, are sound, and the obligation of the respondents is thus held to arise upon the occurrence of a default on any one of the ten mortgages, the second defense is wholly ineffectual. That defense, as already pointed out, is that by the bringing of the Ochacher suit and obtaining therein a deficiency judgment against these respondents, the plaintiff has " split " his cause of action and must forego the liability of the obligors on the guaranty bond for any future loss. It seems almost absurd to say that a party has split his cause of action when he sues for the entire sum due him in the suit brought, although subsequent liabilities of a separate and independent nature might or might not arise, dependent upon the value of the property at such time or times as well as the promptness and solvency of whoever might be the owner or owners of the equities of redemption in the remaining mortgaged parcels. One obligation had heretofore matured. No other had then arisen.

The order denying the motion of the plaintiff to strike out the first and second separate defenses contained in the answers of the defendants Morris Krim and Max Krimsky should be reversed upon the law and the facts, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

RICH, HAGARTY and CARSWELL, JJ., concur; LAZANSKY, P. J., dissents upon the ground, stated in the opinion of Mr. Justice JOHNSTON at Special Term, that the liability of defendants Krim and Krimsky does not accrue until May 7, 1929.

In first case: Order denying motion to strike out the first and second separate defenses of defendants Morris Krim and Max Krimsky reversed upon the law and the facts, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. In each other case: Order reversed upon the law and the facts, with ten dollars costs, and motion granted, with ten dollars costs.