*Municipal Court of the City of Boston*

No. 350201

## PEERLESS CASUALTY COMPANY

v.

## MARINUCCI BROS. and CO., INC.

(December 6, 1954)

*Adlow, C. J.* Action of contract to recover legal expenses allegedly due under a Contract of Indemnity. (Tomasello, J.)

On May 11, 1949, Mathew Cummings and Son, hereinafter referred to as Contractors, signed an agreement with the Chinese Merchants Association, Inc., hereinafter referred to as Owners, to erect a building in the City of Boston in accordance with specifications annexed to the agreement for the sum of $742,600.00. Other provisions of this agreement will be mentioned as they become material to the issues raised by this report.

On August 9, 1949, the Peerless Casualty Company, hereinafter referred to as the Surety issued to the Chinese Merchants Association, Inc., as obligee, a Labor and Material Payment Bond in the amount of $371,000.00. On the same day the Peerless Casualty Company issued to the Chinese Merchants Association, Inc., as obligee, a Performance Bond in the amount of $742,600.00. Mathew Cummings and Son, Contractors, were the Principals named in both bonds for whom the Peerless Casualty Company was the surety.

Simultaneously with the execution and delivery of

these bonds a Contract of Indemnity was executed and delivered to the Peerless Casualty Company in which contract Mathew Cummings and Son was Principal and Marinucci Bros., and Co., Inc., the defendant in this action, was Indemnitor.

On February 2, 1951, the Chinese Merchants Association, Inc., notified the Peerless Casualty Company in writing of the default by the Contractor. Prior to the receipt of said notice, the Surety had requested Frank Mulready, an attorney, to look into the situation, and to report to it. By letter dated January 26, 1951, Mulready advised the Surety as to the disclosures afforded by his inquiry. He reported that as of January 26, 1951, sub-contractors were engaged in projects on the job which, when completed, would cost $194,757.20; that there were miscellaneous bills for material outstanding amounting to $13,640; and that the work remaining to be done by the general contractor would amount to $11,000. At the time there was in the hands of the Chinese Merchants Association $152,000, it appearing that in the previous October and December payments in advance of requisition had been made to the contractor by the Owner in the amount of $45,000.

Between January 15, 1951, and March 8, 1951, Mulready engaged in many conferences with representatives of the Contractor, the Owner and the Indemnitor. On March 8, 1951, a contract was executed between the Chinese Merchants Association, Inc., and Marinucci Bros. and Co., Inc., which contract provided for the completion of the building. Under this agreement the Chinese Merchants Association, Inc., placed in escrow with five trustees, of whom Frank Mulready was one, the sum of $218,795.42, to pay all bills due for labor and materials furnished by sub-contractors as well as such sums as accrued in completing the building. The Trustees consisted of two members and the lawyer for the Chinese Merchants Association, Inc., the lawyer for the Indemnitor, and the lawyer for the Surety. These trustees met fre-

quently from March 8, 1951, up to December 1, 1951, during which period they paid bills, settled claims for extras, and adjusted whatever disputes attended the completion of the job. On December 1, 1951, the building was completed and accepted by the Owner. The Surety paid to its lawyer, Mulready, the sum of $4,000.00 for legal services in connection with the matter. *In the cause under review the Peerless Casualty Company seeks to recover from the Indemnitor the $4,000.00 paid by it on account of legal services.* Aside from the services of Mulready, the nature of which appears from the recital above, there was evidence by one Muello of services rendered by him to the Surety which he valued at $1600.00. The exact nature of his services did not appear, and for the purposes of this report will be ignored.

At the close of the evidence the plaintiff requested the court to rule that

"2. Under the contract of indemnity under paragraph No. 3 the defendant is liable for any and all claims, demands, losses, damages, costs, charges, counsel fees and expenses whatsoever that the plaintiff paid or incurred by reason of, or in consequence of the bonds in evidence," *and the court so ruled.*

Paragraph 3 of the Contract of Indemnity provides in part:

"That the Principal and the Indemnitor (s) shall and will at all times indemnify and keep indemnified the company from and against any and all claims, demands, losses, damages, costs, charges, *counsel fees,* expenses, suits, orders, judgments, and adjudications whatsoever that the Company shall or may for any cause at any time sustain or *incur by reason of or in consequence of said bonds—*". In ruling as requested by the plaintiff the court virtually adopted the language of paragraph 3 of the Contract of Indemnity as a basis of liability.

Notwithstanding this ruling, the court at the request of the defendant ruled that the defendant as indemnitor is not liable to the Surety for counsel fees paid by it for those services in which such counsel

acted as trustee with the representatives of the Owner and the Indemnitor in supervising the completion of the building. The plaintiff filed a motion with the court for a correction of these rulings in view of the apparent inconsistency. To the refusal of the court to acquiesce in this request the plaintiff brings this report.

In order to justify the action of the court, and to reconcile the two rulings noted above, it must appear that nothing that happened after March 8, 1951, and before December 1, 1951, was done by the lawyer for the Surety "by reason of or in consequence of said bonds." We doubt whether anyone will seriously contend that such was the case. Even the court, in refusing the motion of the plaintiff for the correction of the rulings, gave as a reason that the plaintiff had not alleged in its declaration a claim for legal services on account of the Labor and Material Payment Bond. In thus explaining its ruling on the motion there is an intimation that the Indemnitor's liability had ceased with respect to the Performance Bond on March 8, 1951. We do not agree.

Whatever effect the arrangement of March 8, 1951 might have had on the situation as between the parties to the bonds,—the Owner, the Principal, and the Surety, it could not affect the situation as between the Surety and the Indemnitor. Paragraph 3 of the Contract of Indemnity, which has been fully set forth above, is sufficiently comprehensive in its scope to embrace any work done by the Surety in the furtherance of the purpose of these bonds. In a general way this purpose embraced the protection of the Owner from loss growing out of any default by the Contractor. When counsel for the Surety undertook to help straighten out the affairs of the Contractor, in collaboration with the representatives of the Owner and of the Indemnitor, he was merely promoting this basic purpose.

We must not overlook the fact that an essential part of the contract of March 8, 1951, embraced

an undertaking by a group of five trustees, of whom the lawyer for the Surety was one, and the lawyer for the Indemnitor another, to supervise the task of completion of the building. Though there might have been a substitution of a new contract for the old one, a part of the new contract embraced new responsibilities for the Surety. They were responsibilities entailing charges and expenses "by reason of or in consequence of said bonds." The expenses which these services entailed were as much a consequence of a default by the Contractor on his Performance Bond as on his Labor and Material Payment Bond.

There is nothing in these reports, either by way of evidence or of requests for rulings, which in any way distinguishes between the work done by the Surety or its lawyer on account of the Performance Bond or the Labor and Material Payment Bond. The plaintiff brings its claim on the basis of its Contract of Indemnity which promises to indemnify for charges and counsel fees arising because of said "bonds".

It has been urged by the defendant (Indemnitor) that no liability under the Contract of Indemnity can arise until the Surety has suffered a loss by reason of the Principal's failure to meet his obligations, and that no such loss has taken place as to provide a basis for the Indemnitor's liability. Had the parties contemplated such a condition precedent to liability they would have so declared in their agreement. The many requests of this tenor filed by the defendant ignore the fact that the Principal defaulted and became bankrupt, and that if the project was completed without loss it was because of the efforts of the parties involved, including the Surety.

Nor is the suggestion of the defendant that the overpayment by the Owner to the Contractor served to discharge the Surety of liability on the bonds a valid one. *Museum of Fine Arts v. American Bonding Co. of Baltimore,* 211 Mass. 124.

Having properly ruled that the defendant is liable

for counsel fees that the plaintiff incurred by reason of the bonds, the court should have reimbursed the plaintiff for its outlay for services rendered up to December 1, 1951. The court's ruling that the plaintiff could not recover for services rendered between March 8, 1951, and December 1, 1951, was inconsistent with this ruling and should have been corrected on the plaintiff's motion.

*Finding for the plaintiff vacated.*

*Case to be retried on issue of damages only.*

Anthony G. Muello, for the plaintiff.

Sullivan & Sullivan (James F. Sullivan), for the defendant.